Annette **STREETER** and Ivette Ellis, Plaintiffs,

v.

**JOINT INDUSTRY BOARD OF** the **ELECTRICAL INDUSTRY;** Local Union No. 3 of the International Brotherhood of Electrical Workers; New York Electrical Contractors Association Inc.; and Association of Electrical Contractors, Inc., Defendants.

No. 89 Civ. 4872 (KMW).

United States District Court, S.D. New York.

June 21, 1991.

MEMORANDUM OPINION

KIMBA M. WOOD, District Judge.

Defendants move pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6), to dismiss plaintiffs' amended complaint, and for other relief. For the reasons stated below, the court grants the motions in part and denies them in part.

*Background* [1]

Plaintiffs Annette Streeter and Ivette Ellis [2] are women who were terminated in early 1988 from an electrician's apprenticeship program (the "Apprenticeship Program"). Defendant Local Union No. 3 of the International Brotherhood of Electrical Workers ("Local 3") is a labor union representing electricians in the New York metro-

politan area. Defendants New York Electrical Contractors Association, Inc. ("NYECA") and Association of Electrical Contractors, Inc. ("AEC") are both associations of electrical contractors doing business in the New York metropolitan area, organized for the purpose of representing these contractors in their collective bargaining agreements with labor unions. Defendant Joint Industry Board of the Electrical Industry ("JIB") is an entity established pursuant to collective bargaining agreements among defendants Local 3, NYECA and AEC for the purpose of supervising the Apprenticeship Program. Fifteen of JIB's thirty-one members are appointed by and are members of Local 3, seven are appointed by and are members of NYECA, and two are appointed by and are members of AEC. JIB appoints a Joint Apprenticeship Committee that is responsible for the day-to-day supervision of the Apprenticeship Program.

The Apprenticeship Program is a four year training program that apprentice electricians must successfully complete in order to become full, journey-level members of Local 3. The Apprenticeship Program consists of both classroom instruction and placements at job sites with electrical contractors.

Plaintiffs allege that at several of their work site placements, they were subject to verbal and physical sexual harassment and other discriminatory treatment, including failure to provide separate changing facilities. Plaintiffs allege that they were discriminatorily terminated by the electrical contractors on several of these work sites, and then discriminatorily terminated from the Apprenticeship Program.

On or about July 27, 1988, Streeter filed *pro se* an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), naming JIB as a respondent. On April 21, 1989, Streeter received a Notice of Right to Sue, dated March 28, 1989. On December 23, 1988 Ellis filed *pro se* an administrative complaint with the

---

1. The facts stated herein are taken from plaintiffs' First Amended Complaint.

2. Cynthia Ellington, who was originally a plaintiff in this action, agreed to dismiss her claims by a stipulation dated August 3, 1990.

New York Department of Human Rights ("NYDHR"), naming Local 3 as a respondent. On July 27, 1989, Ellis received a corrected Notice of Right to Sue, dated July 27, 1989.

On July 18, 1989 plaintiffs filed their original complaint in this action; on August 4, 1989, plaintiffs filed their First Amended Complaint asserting claims of discriminatory discharge and sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York Human Rights Law, N.Y.Exec.Law § 290 *et seq.*

I. Defendants' 12(b)(1) Motions

Defendants raise two issues of subject matter jurisdiction in their motions to dismiss: (1) can a plaintiff who named only one respondent in her administrative complaint sue another respondent under Title VII, and (2) can plaintiffs sue defendants who were named by neither plaintiff in her administrative complaint, but who are allegedly related to respondents named in that complaint. NYECA and AEC argue that this court does not have subject matter jurisdiction over plaintiffs' Title VII claims because they were not named as respondents in either plaintiff's administrative complaint. JIB makes the same argument with respect to Ellis's Title VII claim, while Local 3 makes the argument with respect to Streeter's claim.

■ Title VII provides that a complainant who files a charge with the EEOC may bring a civil action against the respondent named in that charge within ninety days after the EEOC issues a Notice of Right to Sue. 42 U.S.C. § 2000e–5(f)(1). Thus, a plaintiff generally must name a defendant in her administrative charge in order to bring an action pursuant to Title VII. *See, e.g., Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395 (D.C.Cir. 1988), *cert. denied*, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989). The policy behind Title VII's administrative filing requirement is to allow the EEOC to investigate and mediate claims of discrimination without the need for court action, and thus encourage "cooperation and voluntary compliance ... as the preferred means" for achieving the goal of equal employment opportunities. *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 373, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). This requirement is not absolute, however. The Supreme Court has instructed that Title VII must be interpreted liberally to effectuate its purpose of eradicating employment discrimination. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397, 102 S.Ct. 1127, 1134, 71 L.Ed.2d 234 (1982). Fairness, and not excessive adherence to technicalities, must guide courts in their consideration of Title VII actions. *Love v. Pullman Co.*, 404 U.S. 522, 526–27, 92 S.Ct. 616, 618–19, 30 L.Ed.2d 679 (1972); *Adames v. Mitsubishi Bank, Ltd.*, 751 F.Supp. 1565, 1570 (E.D.N.Y.1990). In accordance with this policy, courts have carved out several exceptions to the Title VII filing requirements based on equitable principles. *Zipes*, 455 U.S. at 398, 102 S.Ct. at 1135; *Dillman v. Combustion Engineering*, 784 F.2d 57 (2d Cir.1986). Plaintiffs seek to invoke one or more of these exceptions to defeat defendants' motions.

A. *JIB and Local 3*

■ JIB and Local 3 stand in similar procedural positions with respect to this motion. Both were named in one of the two plaintiffs' administrative charge. Streeter filed a charge naming JIB as respondent; Ellis's charge named Local 3. Plaintiffs' amended complaint now names both Local 3 and JIB as defendants. Plaintiffs argue that the administrative filing requirements as to JIB and Local 3 were satisfied pursuant to the single filing rule. The single filing rule, an exception to the general filing requirements, provides that where one of a group of plaintiffs properly filed an administrative charge against a defendant, "other non-filing plaintiffs may join in the action if their individual claims 'aris[e] out of similar discriminatory treatment in the same time frame.'" *Snell v. Suffolk County*, 782 F.2d 1094, 1100 (2d Cir.1986), (quoting *Ezell v. Mobil Housing Board*, 709 F.2d 1376, 1381 (11th Cir.1983)).

■ JIB and Local 3 argue that plaintiffs' discrimination claims are too dissimilar to one another for the single filing rule to apply, because the incidents complained of occurred at several different work sites and involved several different employers. The claims of Streeter and Ellis do concern several incidents of sexual harassment occurring at various work sites between 1984 and late 1987. However, all these incidents involve discriminatory firings at these work sites under false pretenses of lateness or absenteeism, and subsequent discriminatory termination from the Apprenticeship Program in early 1988. First Amended Complaint ("Compl.") ¶¶ 37–62, 82–102. In addition, both Streeter and Ellis allege that they were subject to verbal and physical sexual harassment by co-workers and supervisors, that they were denied separate changing facilities, and that they were repeatedly subjected to offensive, sexually explicit photographs of women at these job sites. *Id.* Although the individual acts alleged in the complaint may have taken place at different locations, the complaint outlines nearly identical patterns of sexual discrimination and harassment. The court thus finds that Streeter and Ellis have alleged a substantially similar pattern of sexual discrimination.[3]

JIB also argues that Streeter's and Ellis's claims would have had different likelihoods of conciliation, because Streeter and Ellis had different employment histories and had different levels of success in pursuing appeals from their terminations from the Apprenticeship Program.[4] However, defendants do not point to any differences in plaintiffs' employment histories that are more substantial than must be expected whenever the single filing rule is applied, in other words, whenever two plaintiffs

join in an action against a defendant. Ellis's successful appeal to the Joint Apprenticeship Committee regarding her first termination did not necessarily make it more likely that she would have settled her discrimination claim at the administrative level.

Accordingly, the court holds that plaintiffs' claims are sufficiently related so that the single filing rule applies; thus the administrative filing requirement is waived as to Streeter's claim against Local 3 and Ellis's claim against JIB. *See, e.g., Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1413 (S.D.N.Y.1989) (applying single filing rule; "[a]lthough naturally there are some factual differences between plaintiffs' claims, it is clear that their claims all allege a system of discrimination at Mobil").

### B. *NYECA and AEC*

Plaintiffs argue that the administrative filing requirement should be deemed as to NYECA and AEC (together, the "Employer Associations") because they are closely related to the parties that were named in the plaintiffs' administrative charges and right to sue notices.

■ Where two or more defendants are closely related entities, an administrative charge and right to sue notice against one defendant may be sufficient to provide notice to the other defendants and thus satisfy the administrative filing requirement. *See Kaplan v. International Alliance of Theatrical and Stage Employees*, 525 F.2d 1354, 1358–59 (9th Cir.1975); *Chung v. Pomona Valley Community Hospital*, 667 F.2d 788, 792 (9th Cir.1982) (allowing Title VII action against individual doctors who worked at hospital where plaintiffs named only hospital in EEOC charge).

---

**3.** To the extent that defendants' arguments are directed at plaintiffs' administrative complaints, *Snell* makes clear that the principal function of the administrative filing requirement is to give the employer notice of the claimed discrimination and an opportunity for conciliation. 782 F.2d at 1101. Plaintiffs' administrative filings, alleging ongoing sexual discrimination leading to their discriminatory termination from the Apprenticeship Program (*see* NYDHR Complaint No. 2–E–S–88–132358 (Ellis); EEOC Charge No. 160–88–1994 (Streeter)), were suffi-

cient to put defendants on notice of " 'discrimination like or reasonably growing out of such allegations.' " *Id.* (*quoting Caldwell v. National Ass'n of Home Builders*, 771 F.2d 1051, 1054 (7th Cir.1985)).

**4.** Streeter filed a single unsuccessful appeal with the Joint Apprenticeship Committee, but Ellis filed two appeals, succeeding on her first and losing on her second.

Here, plaintiffs allege that all defendants were closely related for the purpose of administering the Apprenticeship Program. Compl. ¶ 26. Plaintiffs assert that all defendants shared the same records for the purposes of apprentice hiring, Apprenticeship Program administration, and employee discipline, and that all defendants participated in the formulation of labor and personnel policies for the Apprenticeship Program. Plaintiffs also assert that the Employer Associations are related to JIB and Local 3 through the Employer Associations' selection of JIB's members and through the Employer Associations' participation in the collective bargaining process.

These allegations are sufficient to justify further factual inquiry as to whether the Employer Associations are sufficiently related to JIB and Local 3 to satisfy Title VII's administrative filing requirements. The court believes that deferral of this question bearing on the court's subject matter jurisdiction is especially appropriate here, where the question of the relationship among defendants is deeply intertwined with a basic issue going to the merits of this case—whether these defendants can be liable as an "integrated enterprise" for alleged discrimination in the Apprenticeship Program.[5] *See Timberlane Lumber Co. v. Bank of America,* 749 F.2d 1378, 1382 (9th Cir.1984) (motion pursuant to Fed.R.Civ.P. 12(b)(1) must be deferred until summary judgment stage where jurisdictional issue is "intermeshed" with substantive issues); Wright & Miller, Federal Practice and Procedure: Civil § 1350 (1969 & Supp.1990).

In deferring this question, the court is aware that in *Berger,* a case that plaintiffs failed to address in their memoranda of law, the D.C. Circuit rejected this argument on very similar facts. In *Berger,* eight ironworkers alleged that their union's requirements that they have a high school diploma and that they go through either an Apprenticeship Program or Training Program were discriminatory. 843 F.2d at 1406. They sued, among others, the Construction Contractors Council, ("CCC"), an employer association that negotiated the controlling collective bargaining agreements with the union, and appointed trustees to the governing bodies of the Training and Apprenticeship Programs. *Id.* at 1433. The D.C. Circuit held that the CCC could not be liable on plaintiff's Title VII claim because plaintiffs had not named it as a defendant in their administrative complaint, and rejected plaintiffs' argument that CCC had notice of the charges through its representatives on the governing committees of the Apprenticeship Program and Training Programs, which were named in the administrative charge. The court held that the relationship between the CCC and the committees was too attenuated to impute notice to CCC. *Id.* at 1434–35. The *Berger* court however, made this determination on a complete factual record, and indicated that its holding might have been different if there were evidence that CCC was otherwise related to the governing committees. *Id.* at 1435 n. 32 (distinguishing *Gray v. International Brotherhood of Electrical Workers,* 10 Fair Empl.Cas. (BNA) 565 (D.D.C.1975), which allowed plaintiffs to maintain a Title VII action against an employers' association not

---

**5.** Plaintiffs also argue that they should be relieved of the administrative filing requirement as to the Employer Associations because they were unaware that the Employer Associations were responsible parties. *See Dillman v. Combustion Engineering, Inc.,* 784 F.2d at 60. As the Second Circuit has repeatedly stated regarding equitable tolling of ADEA's statute of limitations, plaintiff must show extraordinary circumstances to be entitled to equitable relief from statutory prerequisites to suit. *Id.* at 60; *Cerbone v. ILGWU,* 768 F.2d 45, 49 (2d Cir.1985); *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir.) *cert. denied,* 474 U.S. 1015, 106 S.Ct. 552, 88 L.Ed.2d 479 (1985). Such extraor-

dinary circumstances are present, for example, where an employer's misleading conduct causes plaintiff to be unaware of her claim, or where plaintiff shows that it would have been impossible for a reasonable prudent person to learn of her claim. *Cerbone,* 768 F.2d at 48–49.

In light of its decision to defer consideration of plaintiffs' "related entities" argument until the summary judgment stage, the Court likewise will wait until summary judgment to determine whether plaintiffs can provide evidence of the extraordinary circumstances required for equitable relief from the administrative filing requirement.

named in the administrative charge where the employer was a member of a "related" joint apprenticeship and training program that received notice of the charge.)

## II. Timeliness of Plaintiffs' Claims

### A. *Timeliness of Streeter's EEOC charge*

■ JIB argues that Streeter's claim is barred because she did not file charges with the EEOC within 180 days of her termination from the Apprenticeship Program.

Pursuant to 42 U.S.C. § 2000e–5(e), an EEOC charge must be filed within 180 days after the alleged unlawful employment practice occurred, except that where proceedings have been instituted in a state agency with authority to redress discrimination, a charge must be filed with the EEOC within 300 days. Here, Streeter was terminated from the Apprenticeship Program on January 7, 1988. JIB Exh. B–18. She submitted her EEOC charge on July 27, 1988, 202 days later. Consistent with its normal practice in New York State, the EEOC immediately referred the charge to the NYDHR, and deemed the charge to be effectively cross-filed with the EEOC 60 days later, or 262 days after her termination. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 815–17, 100 S.Ct. 2486, 2491–92, 65 L.Ed.2d 532 (1980); *Scott v. Federal Reserve Bank of N.Y.,* 704 F.Supp. 441, 449–50 (S.D.N.Y.1989). Thus, because Streeter effectively filed her EEOC charge

within the 300 day period, her charge was timely filed.[6] *Id.*

### B. *Timeliness of plaintiffs' claims*

■ Local 3 argues that because many of the acts plaintiffs complain of occurred outside the 300 day limitations period, it may not be liable for these acts.

Where an employer engages in a continuous practice or policy of discrimination, however, the "commencement of the limitations period may be delayed until the last discriminatory act in furtherance of it." *Miller,* 755 F.2d at 25. To establish a continuing violation, plaintiffs must show " 'a series of related acts, one or more of which occurred during the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.' " *LaBeach v. Nestle Co.,* 658 F.Supp. 676, 686 (S.D.N.Y.1987) (quoting *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982)).

Here, plaintiffs allege a "continuous practice and policy of sexual harassment." Complaint ¶¶ 36, 82. Plaintiffs allege similar acts of harassment including, *inter alia,* failure to provide separate changing facilities at job sites. Complaint ¶¶ 47, 49, 55, 88. Plaintiffs also allege a series of discriminatory terminations at job sites. Complaint ¶¶ 39, 42, 59, 60, 85, 92, 95, 97, 99, 100. These terminations culminated in plaintiffs' termination from the Apprenticeship Program, which occurred during the limitations period. Plaintiffs thus have sufficiently alleged a continuing violation to satisfy Title VII's statute of limitations.[7]

---

**6.** Ellis was terminated on May 3, 1988 and filed her complaint with the NYDHR on December 23, 1988, 234 days later. The NYDHR's cross-filing with the EEOC, effective 60 days later, was within the 300 day period and thus timely.

**7.** In this Circuit, a plaintiff must clearly assert a continuing violation both in the administrative charge and the complaint. *Miller,* 755 F.2d at 24; *Cook v. Pan American World Airways, Inc.,* 771 F.2d 635, 646 (2d Cir.1985), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986); *Scott,* 704 F.Supp. at 450. Here, Ellis, in her *pro se* NYDHR complaint, stated: "At the construction sites, the foreman would tell me to go get coffee for the men despite the fact that I had more seniority than male Apprentices who were present." NYDHR Complaint of Ivette Ellis,

No. 2–E–S–88–132358, ¶ 3. She then stated that she was discriminatorily terminated from the Apprenticeship Program. *Id.* at ¶¶ 9, 11–12. Similarly Streeter, in her *pro se* EEOC charge, stated that she was discriminated against by her termination for the Apprenticeship Program and by Local 3's "fail[ure] to properly represent [her] on grievances filed against her former employers." EEOC Complaint of Annette Marie Streeter, No. 160–88–1994. The Court holds that these allegations of ongoing sex discrimination leading to discriminatory dismissal from the Apprenticeship Program are sufficient to allege a continuing violation of Title VII. *See Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) (Title VII claimants' "often inarticulately framed" admin-

### C. Timeliness of Streeter's Action

■ JIB and Local 3 argue that Streeter's action is not timely because it was filed more than 90 days after she received a Notice of Right to Sue from the EEOC. *See* 42 U.S.C. § 2000e–(f)(1).[8]

The ninety day time period begins to run from the complainant's receipt of the Notice of Right to Sue. *See, e.g., Franks v. Bowman Transportation Co.*, 495 F.2d 398, 404–05 (5th Cir.1974), *modified on other grounds*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Here, although the EEOC mailed a Notice of Right to Sue to Streeter on March 30, 1989, it was returned undelivered to the EEOC on April 18, 1989. Affidavit of David A. Bream, October 24, 1989, ¶ 3; Affidavit of Carol Mackenzie, Oct. 20, 1989 ("Mackenzie Aff."), ¶ 10; Exh. D. Streeter, by her counsel, first received the Notice of Right to Sue on April 21, 1989. Mackenzie Aff. ¶ 4. Streeter filed this action on July 18, 1989, 88 days later, and thus within the statutory period.

### III. Defendants' Liability for Alleged Discriminatory Conduct

All defendants argue that the court should dismiss the Complaint because they are not responsible for the alleged discriminatory acts of the individual employers. Plaintiffs counter that all defendants are liable because they constitute an integrated enterprise for the purpose of controlling and administering the Apprenticeship Program. Complaint ¶ 26.

■ Where several parties have an integrated economic relationship and exercise common control over employment practices, they may be liable for each other's discriminatory acts or policies as an integrated enterprise. *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983); *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983); *Marshall v. Arlene Knitwear Inc.*, 454 F.Supp. 715 (E.D.N.Y.1978), *aff'd in part, rev'd in part*, 608 F.2d 1369 (2d Cir.1979).[9]

■ All defendants adamantly contend that they do not in fact constitute an integrated enterprise in administering or controlling the Apprenticeship Program and that they have no role in determining the termination policies of the individual employers that committed the discriminatory acts herein. These arguments are misplaced at the pleading stage. Whether, considering the factors noted above, defendants constituted an integrated enterprise for the purpose of administering and controlling the Apprenticeship Program is a fact-based question that cannot be answered before plaintiff has had discovery. Whether and to what extent all defendants participated in formulating alleged discriminatory policies and to what extent defendants influenced the actions of the individual employers at the job sites cannot be determined solely as a matter of law. *See United States v. Local 638, Enterprise Ass'n of Steam, etc.*, 360 F.Supp. 979 (S.D.N.Y.1979) (defendant employer association had sufficient *de facto* influence over and responsibility for industry employment

istrative charges should be liberally construed); *Song v. Ives Laboratories*, No. 86–4358, Slip Op. 1990 WL 96768 (S.D.N.Y. July 3, 1990).

**8.** 42 U.S.C. § 2000e–5(f)(1) provides, in pertinent part:

if within one hundred and eighty days from the filing of [an administrative] ... charge ... [the EEOC] has not filed a civil action ... [the EEOC] shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the person named in the charge ... by the person claiming to be aggrieved....

**9.** A Court must examine four factors in determining whether an integrated enterprise exists:

(1) Interrelationship of operations. i.e. common offices, common record keeping, shared bank accounts and equipment.
(2) Common management, common directors and boards.
(3) Centralized control of labor relations and personnel.
(4) Common ownership and financial control.

*York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir.1982); *see Armbruster*, 711 F.2d at 1337. No single factor is conclusive, and all four criteria need not be present in a given case. *Id.*

practices to be liable pursuant to Title VII as an agent of member contractors).

JIB and the Employer Associations attempt to rely on *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), in which the Supreme Court held that defendant employers and employer associations could not be vicariously liable pursuant to 42 U.S.C. § 1981 for the discriminatory operation of a hiring hall and an apprenticeship program by a union and a joint apprenticeship and training committee (the "JATC") that administered the apprenticeship program. The trial judge had imposed liability on the employers and the employer associations based only on his findings that a portion of the members of the JATC were appointed by the employer associations and that the JATC was wholly funded by employer contributions. The Supreme Court held that, in the absence of any additional findings regarding the relationship between JATC and the employer associations and employers, there was no basis to find that JATC was the agent of the employers and employer associations, and thus they could not be vicariously liable for JATC's discrimination. *Id.* at 394, 102 S.Ct. at 3151; *see also id.* at 403–04, 102 S.Ct. at 3156–57 (O'Connor, J., concurring).

Here plaintiffs do not allege that defendants had an agency relationship with respect to the administration of the Apprenticeship Program, but rather that they constituted an integrated enterprise. Moreover, even assuming that an agency relationship is required in order to find integrated enterprise liability pursuant to Title VII, plaintiff has not yet had the opportunity to develop a factual basis for its allegations that the relationship between JIB and the Employer Associations and individual employers goes beyond that found inadequate in *General Building Contractors.*[10] The court thus holds that plaintiffs have sufficiently pleaded that defendants constituted an integrated enterprise so as to be liable pursuant to Title VII.

**10.** *Berger,* upon which NYECA attempts to rely in arguing that it may not be held liable for alleged discrimination in the Apprenticeship Program because it had no control thereof, is

## IV. Sufficiency of Plaintiffs' Allegations

### A. *Discriminatory Discharge*

██ JIB argues that because plaintiffs have failed to allege a *prima facie* claim of discrimination, and have not shown that JIB's proffered reason for terminating plaintiffs was pretextual, plaintiffs discrimination claims must be dismissed.

In order to state an employment discrimination claim pursuant to Title VII, plaintiffs must allege that (i) they belong to a protected minority group; (ii) they were qualified for their positions; (iii) they were discharged; and (iv) after they were discharged, the positions remained open and the employer continued to seek applicants from persons of plaintiffs' qualifications. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Plaintiffs have alleged each of these elements, by asserting that (1) plaintiffs are women, (Complaint ¶¶ 15, 17) (2) plaintiffs were qualified to perform all duties of an apprentice in the Apprenticeship Program (Complaint ¶¶ 15, 17), (3) plaintiffs were discharged from the Apprenticeship Program (Complaint ¶¶ 60, 100), and (4) after plaintiffs' discharges, the Apprenticeship Program continued to enroll apprentices (Complaint ¶ 33). Accordingly, plaintiffs have properly met their burden of pleading a *prima facie* claim of discriminatory discharge. JIB's fact-based arguments concerning plaintiffs' performance in the Apprenticeship Program are misplaced at this stage of the case.

### B. *Hostile Environment*

██ JIB and Local 3 argue that they cannot, as a matter of law, be liable on plaintiffs' hostile environment sexual harassment claim because they had no con-

likewise distinguishable because it was decided on a complete factual record rather than the pleadings.

trol over the alleged harassment that plaintiffs suffered at the job sites.

A plaintiff may state a claim for hostile environment sexual harassment against an employer that "knew or should have known of the harassment in question but failed to take prompt remedial action." *Henson v. Dundee,* 682 F.2d 897, 903–05 (11th Cir. 1982). The plaintiff can demonstrate knowledge by showing that she complained to higher authority who failed to take remedial action or by showing that the harassment was so pervasive that the employer should have known about it. *Id.* Here, as stated above, plaintiffs allege a series of similar acts of sexual harassment by their co-workers. They also allege that they alerted their employers, Local 3 shop stewards, and JIB [11] to their discriminatory treatment, but that none of defendants took any action. Complaint ¶¶ 51, 53, 61.

JIB and Local 3 argue that only the individual contractor employers had responsibility and control over the working environment at the job sites. These matters cannot be determined until plaintiffs have had an opportunity for discovery concerning facts relevant to this issue. The court holds that plaintiffs have sufficiently alleged a claim of hostile environment employment discrimination against all defendants.

## V. JIB's Motion for Severance

■ JIB moves to sever plaintiffs' claims for discriminatory termination from the Apprenticeship Program (Plaintiffs' Second, Third, Fifth and Sixth Claims) from plaintiffs' claims for discriminatory treatment at the job sites (Plaintiffs' First and Fourth Claims), because "it is beyond debate" that the JIB has no authority over or role in determining the employment conditions at the jobs sites, and likewise, electrical employers play no role at all in an

apprentice electrician's termination from the Apprenticeship Program." JIB Memo at 49.

As stated above, plaintiffs have sufficiently alleged that all defendants are liable as a joint enterprise for discriminatory treatment at the job sites that culminated in plaintiffs' termination from the Apprenticeship Program. Plaintiffs' claims against all defendants arise out of a series of alleged discriminatory terminations and present common questions of fact including, *inter alia,* whether defendants constitute a joint enterprise, and whether certain acts created a hostile work environment. Plaintiffs' claims thus satisfy the requirements for joinder set forth in Fed.R.Civ.P. 20. At this preliminary stage of the proceedings, it is too early for the court to determine whether a separate trial pursuant to Fed.R.Civ.P. 42(b) is appropriate. Accordingly, the court denies JIB's motion for severance at this time.

## VI. JIB's Motion to Dismiss New York Human Rights Law Claims

In its Memorandum of Law, JIB argues that, should the court dismiss plaintiffs' Title VII claims, it should also decline to exercise jurisdiction over plaintiffs' pendent claims pursuant to the New York Human Rights Law. The court's ruling that plaintiffs' have properly stated Title VII claims renders this argument moot.

■ In a letter to the court, dated February 20, 1990, JIB asserts that the court should decline to assert jurisdiction over plaintiffs' pendent state claims pursuant to New York's election of remedies doctrine, citing *Scott v. Carter–Wallace, Inc.,* 147 A.D.2d 33, 541 N.Y.S.2d 780 (1st Dept. 1989).

Pursuant to New York Human Rights Law, N.Y.Exec.Law § 297(9), a plaintiff alleging unlawful discrimination may elect

**11.** As to JIB, plaintiffs submit a letter from Streeter to Lafayette Jackson, Director of Apprenticeship Training for the Joint Apprenticeship Committee of the Joint Industry Board, appealing her termination from the Apprenticeship Program where she stated, *inter alia:*

I'm a woman and of Hispanic and Native American Indian background, because these groups are under-represented in Local # 3 it has been suggested that I have been an overly complacent victim of bias and harassment. Pl.Exh.G. Any determination of whether JIB had sufficient notice of the alleged sexual harassment must await the summary judgment stage.

to institute either judicial or administrative proceedings, but not both.[12] Once a particular procedure is invoked, a plaintiff is barred from electing any other remedy, unless the NYDHR dismisses the complaint for administrative convenience.

Here, although both Streeter and Ellis filed administrative charges, they were both subsequently dismissed for administrative convenience by NYDHR. NYDHR Determination and Order after Investigation, No. 2–E–S–88–130204E (Streeter); NYDHR Determination and Order after Investigation, No. 2–E–S–88–132358E (Ellis). Accordingly, N.Y.Exec.Law § 297(9) provides no barrier to plaintiff's New York Human Rights Law claim in either state court, *Carter–Wallace*, 541 N.Y.S.2d at 780, or federal court, *Song v. Ives Laboratories*, 735 F.Supp. 550 (S.D.N.Y.1990). JIB does not suggest any other particular reason for the court to decline to exercise pendent jurisdiction; accordingly, the court denies JIB's request that it decline to exercise jurisdiction over plaintiffs' pendent state claims. *See id.*

### Conclusion

For the reasons stated above, the court denies defendants' motions.

The court reminds the parties that any party wishing to file a motion for summary judgment must first write to the court to request a pre-motion conference. Once the court sets a conference date, any party seeking to file a summary judgment motion shall serve and file a Local Rule 3(g) Statement ten days before the premotion conference; opposing counsel shall serve and file a response to the 3(g) Statement five days before the pre-motion conference. The court directs the parties to its Individual Rules of Practice for further details regarding the procedure for exchange of 3(g) Statements.

12. N.Y.Exec.Law § 297(9) provides, in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such per-

Any party intending to file a motion for summary judgment has until June 28, 1991 to request a pre-motion conference from the court. In the event that no motions for summary judgment are filed, a joint pre-trial order is due July 17, 1991 and the case will be placed on the ready trial calendar as of July 22, 1991.

SO ORDERED.

son has filed a complaint hereunder [with NYDHR] or with any local commission on human rights, ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.