Virginia BROWER–COAD, Plaintiff,

v.

FUNDAMENTAL BROKERS, INC., Gnubrokers Management Corp., MMAR Group Inc., Cory J. Miner, and Paul I. Brown, Defendants.

92 Civ. 1655 (RPP).

United States District Court, S.D. New York.

April 1, 1993.

Winthrop, Stimson, Putnam & Roberts, New York City by Francis Carling, for plaintiff.

Lambos & Giardino, New York City by William Spelman, for moving defendants.

## AMENDED OPINION AND ORDER

ROBERT P. PATTERSON, JR., District Judge.

On March 6, 1992, Virginia Brower–Coad filed a complaint against Fundamental Brokers, Inc. ("FBI") and Gnubrokers Management Corp. ("GMC") seeking, *inter alia,* back pay and monetary damages arising out of alleged discrimination on account of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, § 703, 42 U.S.C. § 2000e–2 ("Title VII"), and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("Equal Pay Act"), and alleging discrimination on account of sex and pregnancy-related disability in violation of § 296 of the Executive Law of the State of New York (the "Executive Law").[1] On September 30, 1992, Plaintiff amended her complaint by naming the additional defendants Cory J. Miner, Paul I. Brown, and MMAR Group, Inc. ("MMAR Defendants"). The MMAR Defendants now move to dismiss Brower–Coad's amended complaint against them for failure to state a claim upon which relief may be granted. For the reasons set forth below, defendants' motion to dismiss is denied.

## BACKGROUND

The amended complaint alleges the following as facts. Plaintiff first came to FBI in November 1986 as an office supervisor. In 1987, she was promoted to office manager and several months later became an assistant product manager. In 1988, plaintiff married another FBI employee, Andrew Coad. In June 1989, plaintiff was promoted to product manager, and in August, she began reporting directly to FBI President David Quigley ("Quigley") who told plaintiff that he was upset when he learned she had married a fellow employee.[2]

In November 1989, plaintiff Brower–Coad was offered the job of Director of Human Resources replacing a woman who was terminated by FBI due to her pregnancy. After accepting the new position, plaintiff stopped reporting to Quigley. Plaintiff's promotion came without a raise, and, according to the amended complaint, made her the only female non-broker manager at FBI. She alleges that she was paid substantially less than FBI's male managers for equal work on jobs performed under similar working conditions, requiring equal skill, efforts, and responsibility.

In June 1990, FBI's Chief Financial Officer Andrew Dragunat resigned. As a result, Brower–Coad again reported directly to Quigley. In August, Quigley told plaintiff that the Human Resources and Payroll Departments would be combined in September

---

**1.** Plaintiff received from the Equal Employment Opportunity Commission a Notice of Right to Sue the original defendants on December 12, 1991.

**2.** Plaintiff alleges that Quigley regularly made jokes about what she and her husband did "between the sheets," and said that he would not consider her for a position as manager in the systems area because of her marriage. (Am. Compl. ¶ 16).

or October 1990 under her management and after further discussions promised her a raise in September 1990. In the latter part of September, plaintiff disclosed that she was pregnant, prompting Quigley to tell her that she would never return to work after her pregnancy; plaintiff declared that she would definitely return to work and that she needed to work. After this conversation, plaintiff alleges that Quigley usually called her "Mom" and the Payroll and Human Resources Departments' merger was canceled.[3]

Brower–Coad went into labor on December 12, 1990, giving birth December 13. Afterwards, plaintiff and FBI agreed that she would return to work on April 1, 1991, with the company continuing her salary until then.

During late 1990 or early 1991, around the start of Brower–Coad's maternity leave, the MMAR Defendants created Gnubrokers Holding Inc. ("GHI") allegedly for the purpose of acquiring FBI. Cory Miner and Paul Brown, the principal controlling shareholders of the MMAR Group Inc., became officers, directors, and principal shareholders of GHI during GHI's formation. On February 28, 1991, during Brower–Coad's maternity leave, GHI acquired FBI's assets for GMC, its wholly owned subsidiary. Thereafter, plaintiff was called to the office by Michael Miner, a GHI representative and defendant Cory Miner's brother, and they agreed she would return to work April 8, 1991.

Brower–Coad, on April 8, 1991, returned to work to find most of her office furniture gone. She called Michael Miner to learn what had happened. Michael Miner came into the office and discharged her.[4]

Plaintiff originally sued FBI and GMC on March 6, 1992, alleging violations of the aforementioned statutes. Earlier, on August 28, 1992, plaintiff's counsel in this action had filed involuntary bankruptcy petitions, on behalf of other persons, against FBI and GHI.

On October 9, 1992, GMC, the other original defendant in this action, filed a voluntary bankruptcy petition.[5]

In September 1992, plaintiff amended her complaint by adding the MMAR Defendants, alleging that the MMAR Defendants, FBI, and GMC were a "single employer" within the ambit of pertinent laws, thus making the MMAR Defendants potentially liable for any illegal discriminatory acts committed by FBI and GMC.

The MMAR Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) for dismissal of the amended complaint against them. Defendants concede for the purposes of this motion that they, FBI, and GMC are a single employer, but argue that single employer status alone is insufficient to state a claim for liability. The MMAR Defendants assert they cannot be sued for plaintiff's alleged injuries unless plaintiff alleges that they actually exercised control over the decision-making process that gave rise to the alleged discriminatory treatment.

### DISCUSSION

■ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). When passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972).

Title VII of the Civil Rights Act provides a cause of action against "employers" who engage in discriminatory conduct. The statute defines "employer" as "a person engaged in

---

**3.** Plaintiff alleges that her pregnancy was a determining factor in the October 1990 decision to cancel the merger and that Quigley thereafter avoided her calls and memos while undermining her authority.

**4.** Plaintiff alleges that Quigley initiated the discharge and that her pregnancy and pregnancy leave were determining factors in this termi-

nation. She also alleges that the actions of FBI and GMC were part of a pattern and practice of discrimination by FBI.

**5.** Pursuant to the automatic stay provisions of the ·Bankruptcy Act, this action has been stayed as to these original defendants.

an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b) (1981). "The term 'employer' as used in Title VII of the Civil Rights Act was meant to be liberally construed." *Trevino v. Celanese*, 701 F.2d 397, 403 (5th Cir.1983). *See also Bradley v. Rockland County Mental Health Center*, 25 Fair Empl.Prac.Cas. (BNA) 225, 1980 WL 250 (S.D.N.Y.1980) ("Defendants' narrow interpretation of the terms 'employer' and 'agent' is contrary to the clear policy that the Equal Employment Opportunity Act should be liberally construed").

■ "Under certain circumstances, two entities may be so interrelated that they are treated as a single employer for the purpose of Title VII." *Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172, 1178 (S.D.N.Y.1992). To determine whether entities are sufficiently interrelated so as to constitute a "single employer" and thereby create joint liability for the acts of the entity that is plaintiff's immediate employer, courts look to the National Labor Relations Board ("N.L.R.B.") standard. *Frishberg v. Esprit de Corp., Inc.*, 778 F.Supp. 793, 800 (S.D.N.Y.1991), *aff'd*, 969 F.2d 1042 (2d Cir.1992).[6] For two entities to be a single employer, the N.L.R.B. standard requires "(1) interrelated operations, (2) common management, (3) centralized control of labor relations and (4) common ownership." *Id.; accord Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977); *Perry v. Manocherian*, 675 F.Supp. 1417, 1425 (S.D.N.Y.1987).

■ For the purpose of this motion, the MMAR Defendants concede that they, FBI and GMC are a "single employer" for Title VII purposes, but contend that plaintiff cannot state a claim for liability against the MMAR defendants unless she alleges that

each of them "actually participated in the discriminatory decision-making process."

Defendants misperceive the nature of the single employer doctrine and fail to cite any authority that supports their position. The Court in *Frishberg* recognized that "[p]laintiffs often seek to use the single employer doctrine to hold a parent company liable for the discriminatory acts of a subsidiary or similarly related organization." 778 F.Supp. at 800. The MMAR defendants' concession that they and the original defendants constitute a single employer within the meaning of the N.L.R.B. standard therefore requires that their motion to dismiss be denied.

## CONCLUSION

For the reasons set forth above, the MMAR Defendants' motion to dismiss is hereby denied.

IT IS SO ORDERED.

---

6. Decisions of the district courts indicate that the identical standard governs determinations of single employer status under the Equal Pay Act, 29 U.S.C. § 206(d), and the Executive Law, § 296. *See Bridges*, 800 F.Supp. at 1181 (under N.Y.Exec.Law § 296); *Ratcliffe v. Insurance Co. of N. Am.*, 482 F.Supp. 759, 765 (E.D.Pa.1980) (under Equal Pay Act, 29 U.S.C. § 206(d)). Defendant cites no contrary cases.