**Diana RIVERA, et ano., Plaintiffs,**

v.

**PUERTO RICAN HOME ATTENDANTS SERVICES, INC., et al., Defendants.**

**No. 95 Civ. 8453 (LAK).**

United States District Court,
S.D. New York.

April 25, 1996.

As Corrected April 29, 1996.

Eleanor Jackson Piel, New York City, for Diana Rivera, Iris Fernandez.

Daniel Cobrinik, Underweiser & Underweiser, New York City, for Puerto Rican Home Attendants Services, Inc., Michael Nunez.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The City of New York moves pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6) to dismiss this employment discrimination action brought under Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law as against it on the ground that the City was not named in the EEOC charges and, in any case, because the City was not the plaintiffs' employer. The motion is denied.

### Facts

The plaintiffs in this action, Diana Rivera and Iris Fernandez, are both former employees of defendant Puerto Rican Home Attendants Service, Inc. ("PRHAS") and allege similar charges of sex discrimination and retaliation. (Def.Mem. 1)

*The EEOC Charges*

The City's motion turns in part on whether the plaintiffs may sue the City in view of their alleged failure to name the City as a party in their EEOC charges.

Plaintiffs each filed a charge with the EEOC alleging sexual harassment and retaliation by PRHAS between April and May of 1995.[1] (Nunez Aff. Ex. B; Cpt. ¶ 3; Am.Cpt. ¶ 3; Piel Aff. ¶¶ 4-5) PRHAS was the only name each plaintiff listed in response to the space provided for the "Name[ of] the employer, labor organization, ... state or local government" who discriminated against the complainant. (*Id.*)

In a statement attached to her EEOC charge, Ms. Rivera discussed in detail her complaints about the conduct of Juan Hernandez, now a defendant in this action, and described there as Deputy Director of PRHAS.[2] However, Ms. Rivera made no mention of the City.

The other plaintiff, Ms. Fernandez, attached an affidavit to her EEOC charge that described in detail her "complaint of harassment against [defendants] Michael Nunez and Juan Hernandez, and the Puerto Rican Home Attendants Services, Inc." Ms. Fernandez' affidavit specifically mentioned the City. She stated that PRHAS "is a home care agency providing personal care services to the elderly and infirm in the South Bronx. The agency is funded by Medicaid through the Medicaid Managment [sic] Information System. The Human Resources Administration of the City of New York is the monitoring agency." (Nunez Aff. Ex. B)

On July 10, 1995, the EEOC issued both plaintiffs right to sue letters against defendant PRHAS. (Piel Aff. ¶ 7; Cpt. Exs. A–B; Amended Cpt. Exs. A–B) The EEOC conducted no investigation or conciliation efforts. (Pl.Mem. 2, 7)

*Notice of Claim*

Subsequent to filing the EEOC charges and prior to filing the complaint in this Court, plaintiffs each filed a notice of claim with the City asserting the City's responsibility as an employer. (Piel Aff. ¶ 6) The City acknowledges that a notice of claim was filed. (Def's Reply Mem. 5) However, neither party's papers sheds light on the specific date that a notice of claim was filed, and it is not clear whether this occurred before or after the plaintiffs received right to sue letters.

---

1. It appears that Ms. Fernandez filed her EEOC charge on May 12, 1995, but the precise date of Ms. Rivera's EEOC charge cannot be determined from the record, which is inconsistent, indicating that the date was either on April 12 or May 10 of 1995.

2. The complaint alleges that Mr. Hernandez was employed up until September 29, 1995 as an Assistant Director of Administration, in charge of the fiscal department at PRHAS. (Am.Cpt. ¶ 9)

*The Complaint*

On October 4, 1995, the plaintiffs filed this action, naming PRHAS, Mr. Nunez and Mr. Hernandez, as well as the City, as defendants. The initial complaint alleged, as had Ms. Rivera in her EEOC charge, that PRHAS was funded by Medicaid and "is monitored by the Human Resources Administration of the City of New York." (Cpt. ¶ 6; *accord,* Am.Cpt. ¶ 6) In addition, the complaint justified naming the City as a defendant because it allegedly "contracts with and monitors the conduct of the management of PRHAS, holding itself responsible by insuring the public against the wrongdoing of the managing employees of PRHAS, [and] is accordingly liable for the conduct of the defendants in this action." (Cpt. ¶ 7; *accord,* Am.Cpt. ¶ 7) [3]

*Relationship between PRHAS and the City*

The parties dispute the relationship between PRHAS and the City. In particular, the defendant disputes plaintiffs' allegation that the City actively monitors the management of PRHAS and holds itself out to the public as responsible for the management of PRHAS. The City's moving papers include numerous references to the contract between the City and PRHAS, which appear to limit the City's responsibility in selecting PRHAS' employees and setting the conditions of their employment.

The City places heavy emphasis on Clause 3.8 of the contract, which states in relevant part:

"1. All ... employees of the Contractor [PRHAS] who are employed by the Contractor to perform work under this Agreement are neither employees of the City nor under contract to the City and the Contractor alone is responsible for their work, direction, compensation and personal conduct while engaged under this Agreement. Nothing in this Agreement shall impose any liability on the City for acts, omissions, liabilities, or obligations of the Contractor ... including but not limited to unemployment insurance, worker's compensation, disability benefits and social security.

"2. It is understood that all personnel of the Contractor are employees of the Contractor and that only the Contractor may hire, discipline and discharge such employees." (Def.Mem.Ex. 1 at 44)

The plaintiffs in turn point to other provisions of the contract that would tend to strengthen the impression of the City's control. These provisions include the City's exclusive right to authorize services (*id.* at 13), specifications about and control over the nature of services provided to recipients (*id.* at 15), specifications about the recruiting, screening, and training of home attendant employees (*id.* at 17–21), and the right to eliminate PRHAS' reimbursable staff or staff hours in the event of budget cutting (*id.* at 37). In addition, the contract provides specifically that the City will approve candidates for the positions of Program Director (the position allegedly held by Mr. Nunez, [Am. Cpt. ¶ 9] ), Assistant Director for Field Operations, and Assistant Director of Administrative Services. (Def.Mem.Ex. 1 at 23) The preamble states that the City's Department of Social Services provides personal care services pursuant to federal and state social security regulations. (*Id.* at 1)

*Discussion*

*Failure to Name the City in the EEOC Charge*

The City's first argument for dismissal, relating to the plaintiffs' alleged failure to name it in the EEOC charge, derives from 42 U.S.C. § 2000e–5(f)(1), which states in relevant part that "a civil action may be brought against the respondent *named in the charge*" after receiving a right to sue letter from the Commission. 42 U.S.C. § 2000e–5(f)(1) (emphasis added).

 This requirement serves two important functions: (1) it provides notice to the charged party of the alleged violation, and (2) it facilitates the primary goal of voluntary compliance. *Eggleston v. Chicago Journeymen Plumbers' Local Union No.*

___

3. The complaint referred to the City at one point as "the real party in interest." (Cpt. ¶ 7; *accord,* Am.Cpt. ¶ 7)

*130,* 657 F.2d 890, 905 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *Agugliaro v. Brooks Bros., Inc.,* 802 F.Supp. 956, 960 (S.D.N.Y. 1992); *Drummer v. DCI Contracting Corp.,* 772 F.Supp. 821, 828 (S.D.N.Y.1991); *Koster v. Chase Manhattan Bank,* 554 F.Supp. 285, 288 (S.D.N.Y.1983). While it is true that a party not named in an EEOC charge ordinarily may not be sued under Title VII,[4] the requirement should be assessed with this "twofold" purpose in mind.[5] *Eggleston,* 657 F.2d at 905–906; *see also Agugliaro,* 802 F.Supp. at 960 (when failure to comply with this requirement does not undermine the purpose of the requirement, courts have allowed plaintiffs to sue defendants who were not named in the EEOC complaint); *Koster v. Chase Manhattan Bank,* 554 F.Supp. at 289 (same). Indeed, it long has been recognized that courts should take "a flexible stance in interpreting Title VII's procedural provisions" because the ultimate result of a stringent interpretation would be to frustrate the statute's purpose. *Egelston v. State University College at Geneseo,* 535 F.2d 752 (2d Cir.1976); *see also Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972).

◼ Although plaintiffs failed to name the City in their EEOC charges, they point to other evidence of the City's notice, or likelihood of notice. First, Ms. Fernandez specifically mentioned the City in the affidavit accompanying her EEOC charge.[6] Second,

plaintiffs assert that they served a notice of claim on the City before filing their complaint in this Court, a fact acknowledged by the City. (*See* Piel Aff. ¶ 6; Def.Reply at 7) Third, plaintiffs point to a provision in the contract between the City and PRHAS which requires PRHAS to notify the City within three working days "of the initiation by or against the Contractor of any legal action or proceeding in connection with or relating to this agreement" in order to suggest that the City must have been notified about the EEOC charge. (Pl.Mem. 7; Def.Mem.Ex. 1 at 58) Fourth, plaintiffs allege that the close relationship between the City and PRHAS provides a basis for inferring that PRHAS must have relayed its knowledge to the City.

Drawing all reasonable inferences in the plaintiffs' favor, as the Court must on a motion of this character, the Court is bound to conclude that the City had notice of the EEOC complaints or, at least, that the resolution of that question adversely to the plaintiffs at this early stage would be premature. *Cf. Drummer,* 772 F.Supp. at 828 (drawing all reasonable inferences in the plaintiff's favor in assessing whether to infer that defendant not named in the EEOC charge had received notice); *Streeter v. Joint Indus. Bd. of Elec. Indus.,* 767 F.Supp. 520, 524 (S.D.N.Y.1991) (appropriate to defer issue of whether defendants were so closely related that an administrative charge against one

---

**4.** This requirement often is "said to be jurisdictional." *Eggleston,* 657 F.2d at 905; *see also Bridges v. Eastman Kodak Co.,* 822 F.Supp. 1020, 1024 n. 4 (S.D.N.Y.1993) (deciding whether to dismiss a defendant because of a plaintiff's failure to name that defendant as a party in the EEOC charge is a jurisdictional issue).

**5.** Another provision, 42 U.S.C. § 2000e–5(e)(1), requires a complainant to serve notice of the charge upon the person against whom such charge is made within ten days of filing a complaint. It is described as having the same purpose as 42 U.S.C. § 2000e–5(f)(1), that is, to provide notice to encourage settlement of discrimination disputes through conciliation and voluntary compliance. *Butts v. City of New York Dept. of Housing,* 990 F.2d 1397, 1401 (2d Cir. 1993).

**6.** Although, the attorney for plaintiffs avers that Ms. Rivera made a specific reference to the City similar to Ms. Fernandez', (Piel Aff. ¶ 4), the

actual EEOC charge attached to the affidavit of Michael Nunez, in connection with a motion to dismiss by PRHAS, establishes the contrary. (Nunez Aff.Ex.B.)

The Court finds that it is appropriate to consider the EEOC charges, which are referenced by but not attached to the complaint, for several reasons. First, the charges are integral to the complaint, and thus properly considered on a Rule 12(b)(6) motion. *See San Leandro Emergency Medical Plan v. Philip Morris Cos., Inc.,* 75 F.3d 801, 808–09 (2d Cir.1996). Second, to the extent that the City's motion for dismissal is regarded as a jurisdictional question, *see* note 4 *supra,* and considered as a 12(b)(1) motion, the EEOC charges and other record evidence may be examined because this is a "speaking motion," thus permitting the Court to look outside the complaint. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1364 (2d ed. 1990) ("Wright & Miller").

defendant may suffice to provide notice to the other).

Nor would treating the City as having been named in the EEOC charge frustrate the second purpose of the requirement that prospective defendants be named in an EEOC charge—encouraging voluntary compliance. Here, there was no investigation or effort at conciliation. In consequence, if the EEOC was unaware that the plaintiffs charged the City with responsibility for the alleged discrimination, it in no way interfered with conciliation efforts. *See Koster*, 554 F.Supp. at 288. The City's contention that an EEOC investigation would have been more likely had it been named is too speculative to bear weight here.

■ The notice-voluntary compliance approach is not the only formulation of the problem presented here. Some courts have applied a four-factor test developed by the Third Circuit in *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir.1977), to determine whether there is an "identity of interest" between the named and unnamed parties in an EEOC charge, in which case the statutory purpose would not be frustrated by permitting an action against the unnamed party.[7] Under the identity of interest test, courts may permit a Title VII action to proceed against a party not named in an EEOC charge based on one or more of the following factors: (1) the complainant could not through reasonable effort have ascertained the role of the unnamed party before filing the EEOC complaint; (2) the interests of the unnamed party are so similar to those of the named party that it would be unnecessary to include the unnamed party in the EEOC proceedings for the purpose of voluntary compliance and conciliation; (3) the unnamed party suffered no actual prejudice as a result

of being omitted from the EEOC proceedings; and (4) the unnamed party represented to the complainant in some way that its relationship with the complainant was to be through the named party. *Philippeaux v. North Central Bronx Hosp.*, 871 F.Supp. 640, 649–50 (S.D.N.Y.1994) (exception permitted where two factors weighed against and two weighed more strongly in favor of plaintiff); *Bapat v. Connecticut Dept. of Health Services, Inc.*, 815 F.Supp. 525, 530 (D.Conn. 1992) (action may proceed where "one or more of the following factors is present").

■ Application of the identity of interest test reinforces the conclusion that dismissal of the City based on plaintiffs' failure to name it in the EEOC charge would be improper, at least at this stage. Because the EEOC never conducted an investigation or conciliation efforts, the City suffered no prejudice as a result of not being named in the charge. The third factor therefore weighs in plaintiffs' favor. *Accord, Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1242 (2d Cir.1995); *Eggleston*, 657 F.2d at 908; *see also, Bridges v. Eastman Kodak Co.*, 822 F.Supp. 1020, 1024 (S.D.N.Y.1993) (no evidence of prejudice to person unnamed in the EEOC charge where the EEOC investigation was perfunctory). Drawing all reasonable inferences in plaintiffs' favor, the Court finds, for purposes of this motion, that the fourth factor of the identity of interest test is satisfied as well. The provision of services by PRHAS on behalf of the City pursuant to federal and state law may have amounted to a representation to the plaintiffs, and to the public more generally, that the City, the unnamed party in the EEOC charge, acted through PRHAS. Plaintiffs' possible satisfaction of both of these factors prevents dismissal of the City at this time.[8]

---

7. Various courts have used the four-factor identity of interest test instead of, along with, or synonymously with the inquiry into whether the statute's twofold purpose has been frustrated. For example, in *Eggleston*, after examining whether the statute's twofold purpose was frustrated, the Court discussed how several factors in the analysis echoed the four-prong test in *Glus*, 562 F.2d at 888. However, two district court opinions made no independent mention of the identity of interest test. *Drummer*, 772 F.Supp. at 828–30, and *Koster*, 554 F.Supp. at 288–89. In *Johnson*

*v. Palma*, 931 F.2d 203, 209 (2d Cir.1991) the Second Circuit referred only to the identity of interest test. In *Bapat v. Connecticut Dept. of Health Services, Inc.*, the Court treated the two as synonymous. 815 F.Supp. 525 at 530 (D.Conn. 1992). This apparent inconsistency is not troubling because the approaches are ultimately quite consistent in substance.

8. The first factor weighs in the defendant's favor. As for the second factor, it is a matter of hot dispute that bears on a core issue of liability—to

*Whether the City is an "Employer"*

The City seeks dismissal on the alternative ground that the complaint fails to state a sufficient claim for relief because the City was not plaintiffs' "employer" within the meaning of 42 U.S.C. § 2000e(b), a provision that offers little guidance as to the meaning of this term.[9]

Courts have used numerous formulations in assessing whether a defendant is an "employer" within the meaning of Title VII and other employment discrimination statutes. They all have in common a focus on one factor at issue here: the amount of control or supervision a defendant exerts.

In one approach, the Second Circuit, drawing on the Supreme Court's decision in *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), held that where a statute fails adequately to define the term "employee," the common law agency test should be applied to distinguish between independent contractors, which are not protected under the statute, and employees who are covered. *Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993). In such cases, particular emphasis should be placed on a defendant's right to control the "manner and means" by which work is accomplished. 987 F.2d at 90. Labels or the corporate form under which a plaintiff does business are not dispositive. Consequently, in *Frankel,* a contract characterizing persons in plaintiff's position as "independent contractors" was not sufficient to warrant dismissal. *Id.* at 88, 90.

Another approach examines similar factors to assess whether two entities may be treated as "joint employers." *See, e.g., NLRB v. Solid Waste Services, Inc.,* 38 F.3d 93 (2d Cir.1994). A joint employer relationship may be found where there is sufficient evidence that a defendant had immediate control over another company's employees. Relevant factors include the commonality of hiring, firing, discipline, pay insurance records, and supervision. 38 F.3d at 94.

Yet another approach asks whether two entities are so interrelated that they may be treated as a "single employer" for the purpose of Title VII. *Brower–Coad v. Fundamental Brokers, Inc.,* 856 F.Supp. 147, 150 (S.D.N.Y.1993); *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1178 (S.D.N.Y.1992). Under this test the Court looks for evidence of: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *E.g., Brower–Coad,* 856 F.Supp. at 150. Not every factor need be present, and no particular factor is controlling. The test ultimately depends on whether "all the circumstances of the case" tend to show the absence of an arm's length relationship between two entities. *Lihli Fashions Corp., Inc. v. NLRB,* 80 F.3d 743, 747 (2d Cir.1996).

Here, the complaint alleges that the City contracts with and monitors PRHAS and holds itself out as responsible to the public for the wrongdoing of the managing employees of PRHAS. (Am.Cpt. ¶ 7; Cpt. ¶ 7) Consequently, plaintiffs' allegations would permit proof of control sufficient to bring the City within the definition of "employer" under the common law agency principles or that would warrant treating the City and PRHAS as joint employers or a single employer. As it is well established a motion to dismiss should not be granted unless there plaintiffs can prove no set of facts under their allegations which may entitle them to relief,[10] the motion must be denied.

The contract between PRHAS and the City put in evidence by the City on this motion does not change this result. It does no more than convert the Rule 12(b)(6) motion to dismiss into a motion for summary

the extent that the City exerts significant control and monitoring, as plaintiffs allege, this factor may be satisfied, but to the extent that the City has contracted away liability for alleged harassment by managing employees of PRHAS the second factor would not be satisfied.

**9.** The statute defines an employer as simply "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks ... and any agent of such a person" and proceeds to exempt certain groups, none relevant to this case, from the definition of employer. 42 U.S.C. § 2000e(b).

**10.** *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

**950**

judgment[11] and leave a material dispute over the amount of the City's supervision and control over PRHAS. As exemplified by each party's emphasis on different portions of the contract, the contract actually cuts in both directions. Although on balance the contract seems to delegate more control than it retains, it contains enough indicia of control by the City over the manner of employment and the provision of services by PRHAS that, interpreted in the light most favorable to the plaintiff, and in the absence of further evidence to the contrary, leaves a genuine issue of disputed fact.

Accordingly, resolution of the status of the employment relationship between the City and individuals workers at PRHAS is inappropriate at this stage. *See Bridges,* 800 F.Supp. at 1177; *see generally State University College at Geneseo,* 535 F.2d at 754.

### Conclusion

For the foregoing reasons, the City's motion to dismiss on the grounds that the City was not named in the EEOC charge and that it is not an "employer" within the meaning of Title VII is denied.

SO ORDERED.

---

11. *See* Fed.R.Evid. 12(b); Wright & Miller § 1366.