Ulises GARCIA, Manuel Boria, Felix Montalban, Patricio Diaz, Jose A. De-Leon, Jose A. Caban, Moises DeLeon, Juan Padilla, Juan L. Garcia, Jose L. Boria, Justino Diaz and Juan C. Valdes, Individually and on behalf of all others similarly situated,

v.

GARDNER'S NURSERIES, INC. and Gil Ouellette.

Civ. No. H–83–988.

United States District Court, D. Connecticut.

April 25, 1984.

Nancy B. Alisberg, Neighborhood Legal Services, Inc., Hartford, Conn., for plaintiffs.

Thomas M. Bounty, Brenda A. Eckert, Shipman & Goodwin, Hartford, Conn., for defendants.

## RULING ON MOTION TO DISMISS

CLARIE, Senior District Judge.

The defendants, Gardner's Nurseries, Inc. and Gil Ouellette, a supervisor, have moved pursuant to Rule 12(b)(6), Fed.R. Civ.P., to dismiss three aspects of the plaintiffs' amended complaint. The defendants have requested the Court to dismiss the Title VII claims against the defendant Ouellette, to dismiss all of the Title VII claims of the eleven named plaintiffs, other than Garcia (hereinafter "the eleven plaintiffs"), and to dismiss the plaintiffs' 42 U.S.C. § 1981 claims. Concerning Ouellette, the defendants represent that the plaintiff Garcia's failure to name Ouellette as a respondent in his two administrative complaints now precludes Ouellette's inclusion as a Title VII defendant. The defendants assert that the eleven plaintiffs have failed to exhaust their administrative remedies as required by Title VII. The defendants argue that the § 1981 claims of the amended complaint are based upon alleged discrimination against the plaintiffs by reason of their status as Hispanic Puerto Ricans. They have alleged that the discrimination involved was based upon national origin, rather than upon the racial discrimination which § 1981 was intended to redress. The Court finds (1) that the plaintiff Garcia's failure to include Ouellette as a respondent in Garcia's administrative complaints proves fatal to Ouellette's position as a Title VII defendant here; (2) that no prejudice will flow to the defendants if the Title VII claims of the eleven plaintiffs are allowed to remain, notwithstanding their failure to exhaust administrative remedies; and (3) that the plaintiffs have presented sufficient allegations of racial discrimination on their face to invoke the protection of § 1981. Therefore, the Court dismisses the Title VII claims against Gil Ouellette, but denies the defendants' motions to dismiss the Title VII claims of the eleven plaintiffs or to dismiss the plaintiffs' § 1981 claims.

### Facts

This action was brought by plaintiff, Ulises Garcia, a Hispanic of Puerto Rican

descent, and eleven other named plaintiffs of Puerto Rican descent, on behalf of themselves and other employees and former employees of Gardner's Nurseries ("Gardner's") similarly situated. They allege that Gardner's and its supervisor, Ouellette, "have engaged in a series of discriminatory practices against Puerto Rican employees because of their race and national origin, in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981." Garcia further claims that the defendants have retaliated against him as a result of his opposition to their discriminatory practices, in violation of Title VII. The plaintiffs invoke the Court's jurisdiction under 42 U.S.C. § 2000e–5(f)(3), and 28 U.S.C. §§ 1331 and 1343(3), (4).

Garcia, a native born Puerto Rican, moved to the State of Connecticut in 1955 and began his employment with the defendant nursery in March, 1961. He is bilingual in English and Spanish, while the other eleven plaintiffs who are seasonally employed by Gardner's are also Hispanics of Puerto Rican descent.

Gardner's is a Connecticut corporation with offices in Rocky Hill, Connecticut, and with nursery growing fields in East Hampton, and Windsor, Connecticut. The defendant Ouellette, a white male, is employed by Gardner's as a supervisor. In that capacity, he was the immediate supervisor of the plaintiffs. The latter represent that both defendants, Gardner's and Ouellette, are "employers" who affect interstate commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b), (h).

In 1969, after Garcia had worked approximately seven years as a field hand and tractor driver, Gardner's assigned him the task of overseeing approximately ten to twelve field workers. His duties were those of a crew leader, or "straw boss." In this capacity, Garcia would, among other things, receive daily work instructions in English from his supervisor, and translate and relay these instructions to his crew, transport his crew to their assigned field, instruct new field hands, oversee compliance with daily instructions, report problems arising with the crew to Gardner's officials, act as an intermediary between the crew and these officials, interpret for both his crew and other crew leaders, and provide training for prospective supervisors. As such, Garcia's pay was not significantly higher than that of the field hands.

This arrangement continued satisfactorily until 1980, when the defendant Ouellette assumed the duties as Garcia's immediate supervisor. According to the amended complaint, Ouellette subjected the plaintiffs to undue harassment, ridicule, intimidation, spying, verbal abuse, and, in sum, created an atmosphere rife with hostility, racial degradation, and prejudice based upon national origin. On several occasions, Garcia, acting in his capacity as an intermediary, claims to have reported to officials of Gardner's Ouellette's allegedly discriminatory actions. On July 1, 1981, Garcia reported to one of the principals, Marshall Gardner, what he considered to be a particularly onerous and unfair action taken by Ouellette. As a direct result of this communication, Ouellette terminated Garcia.

On July 16, 1981, Garcia filed a complaint, based upon these facts, with both the Connecticut Commission on Human Rights and Opportunities (CHRO) and the Equal Employment Opportunity Commission (EEOC). These administrative complaints alleged that Gardner's had unlawfully discriminated and retaliated against Garcia, and were filed on behalf of Garcia and all others similarly situated. However, neither of Garcia's administrative complaints named Ouellette individually as a discriminating official. On August 3, 1983, Garcia requested the EEOC to issue a right to sue notice. The EEOC acceded and issued such a notice on August 25, 1983. Garcia received this notice of his right to sue on August 29, 1983.

The eleven other plaintiffs have also alleged Title VII and § 1981 discrimination and harassment by Gardner's and its supervisor, Ouellette. None of these eleven has filed an administrative complaint in this matter. All twelve plaintiffs seek equitable and legal relief and costs. Said plain-

tiffs, together with all other Hispanics of Puerto Rican descent currently employed by Gardner's, or employed after November 21, 1977, seek certification as a class allegedly discriminated against by the defendants. This motion for class certification has been filed, but not yet heard by the Court. This decision will only rule upon the defendants' motion to dismiss.

## Discussion of Law

The defendants have moved to dismiss (1) Gil Ouellette as a Title VII defendant, (2) the Title VII claims of the eleven named plaintiffs, other than Garcia, and (3) all § 1981 claims. The Court shall address these issues *seriatim.*

### A. *Title VII Claims Against Gil Ouellette*

The plaintiff Garcia filed his discrimination complaints against Gardner's Nurseries, Inc. alone, with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunities Commission in July, 1981. Ouellette, a supervisor at Gardner's Nursery from whom Garcia and the other plaintiffs received work orders, was not named as a respondent in those complaints. Ouellette, who is now named as a defendant in this case, moves the Court to dismiss against him, because he was not similarly named in Garcia's administrative complaints.

■ It is the general rule that a private civil action may only be instituted "against the respondent[s] named in the charge" filed with the EEOC. 42 U.S.C. § 2000e–5(f)(1). While some courts have recognized exceptions to this rule, the facts of the case at bar do not require the Court to make such an exception here. In *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3rd Cir. 1977), the Third Circuit enumerated factors to consider in granting an exception to the general rule. *Glus* has stated these factors as follows:

"1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's so that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party."

■ The Court having considered these four factors articulated in *Glus, supra,* concludes that the exception recognized therein is not applicable here. The identity of Ouellette was ascertainable and known at the time of the EEOC filing, and therefore the first factor warranting the exception is altogether lacking. *See, Balsamo v. Alitalia Airlines,* Civ. No. H–81–896 (D.Conn. December 28, 1982). Ruling on Motions to Dismiss and Strike (Clarie, J.). This Court therefore dismisses the plaintiffs' Title VII claims against Ouellette.

### B. *Title VII Claims of the Non-Exhausting Plaintiffs*

The defendants have moved this Court to dismiss the Title VII claims of the eleven named plaintiffs, other than Garcia, because these eleven plaintiffs failed to exhaust their administrative remedies. The plaintiffs' response explains that so long as a single named plaintiff (1) has exhausted administrative procedures and (2) has asserted class discrimination in his EEOC complaint, other named plaintiffs and class members are not required to exhaust. They argue that Garcia's EEOC complaints meet these two requirements, and thus, the other eleven plaintiffs were not required to have filed separate, individual EEOC complaints before bringing this lawsuit.

As recognized by the Fourth Circuit, case law is less than absolutely clear on this issue.

"There is some confusion in the decisions on the treatment to be accorded [a plaintiff's claims] if he sues along with other plaintiffs who have qualified by filing charges with, and receiving a right-to-sue letter from the EEOC. Some of the decisions hold categorically that such a plaintiff should be dismissed. [*Inda v. United Air Lines, Inc.*, 565 F.2d 554, 558–59 (9th Cir.1977)] .... In other decisions, the standing of a non-charging plaintiff has been upheld if his claim is 'substantially identical' with that of another plaintiff who has standing under Title VII to sue. [*Crawford v. United States Steel Corp.*, 660 F.2d 663, 665–66 (5th Cir.1981)]." *Dalton v. Employment Sec. Commission*, 671 F.2d 835, 838 (4th Cir.1982).

Because the same result would have obtained under either theory in the *Dalton* case, the Fourth Circuit did not decide which theory it ultimately would adopt. *Id.*, at 838. The more persuasive line of cases, however, choose the commonsensical approach of *Crawford, supra*, which recognized the danger of exalting form over substance, thereby defeating the remedial purpose of the statute in the process. *Crawford, supra*, at 666, *Lo Re v. Chase Manhattan Bank*, 431 F.Supp. 189, 193–94 (S.D.N.Y.1977). These cases examine the purposes behind exhaustion requirements with an eye toward effecting the intent of Title VII.

■ The primary purposes of requiring exhaustion in an EEOC context are to give notice to the employer of the alleged discriminatory actions, and to facilitate voluntary compliance should the EEOC find cause for the complaint. *Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C.Cir.1981), *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir.1968), *Spirt v. Teachers Insurance and Annuity Association*, 93 F.R.D. 627, 641 (S.D.N.Y.1982). As long as the factual allegations of the administrative complaint already filed (1) have provided notice to the employer of the incidents alleged by the non-exhausting employees, and (2) have triggered an inquiry by the EEOC comprehensive enough to include the incidents alleged by the non-exhausting employees, so as to unearth all the relevant facts and enhance the possibility of voluntary settlement, there is no need to require the non-exhausting plaintiffs to exhaust. *Lo Re, supra*, at 195, *Jackson v. Seaboard Coast Line Railway Co.*, 678 F.2d 992, 1011, 1012 (11th Cir.1982). *See also Bret v. Mountain States Telephone and Telegraph Co.*, 502 F.Supp. 715, 717 (D.Ariz.1980). In sum, it is "not necessary for the remaining [non-exhausting] plaintiffs to have filed charges with the EEOC to join as co-plaintiffs in a class so long as 'they are in a class [with the EEOC charging parties] and assert the same or some of the [same] issues.'" *Lo Re, supra*, at 194.

■ Garcia drafted his EEOC complaint so as to include the alleged discriminatory acts against his co-workers as well as himself. While Garcia was the only employee actually terminated by Gardner's, his allegations regarding discrimination in terms, conditions and privileges of employment, and those concerning harassment, racial epithets and the like are substantially similar to those of the non-exhausting plaintiffs. One of the material distinctions between Garcia's situation and that of the field hands is that Garcia was vested with some supervisory, or overseeing responsibilities. It appears, at this early stage of the pleadings, that Garcia was a kind of "straw boss," who took orders from defendant Ouellette and passed them along to the other workers. It is, as yet, unclear whether this responsibility was Garcia's because of a significantly superior job position to that of the field hands, or because he was the only bilingual worker who could translate the supervisor's orders into Spanish and communicate with them in a language they understood.

The Court finds that Garcia's EEOC complaint properly exhausted his administrative remedies and gave notice to Gardner's Nurseries of the alleged Title VII violations against both himself and the other similarly situated workers. The latter eleven plaintiffs have not sought to expand

these claims beyond the scope of Garcia's EEOC complaint. Thus, no prejudice will result by allowing the other eleven plaintiffs to remain in this case. The Court denies the defendants' motion to dismiss the Title VII claims of the eleven named plaintiffs other than Garcia without prejudice to its being renewed at the close of the plaintiff's case.

## C. *Claims under 42 U.S.C. § 1981*

■ In their amended complaint, the plaintiffs allege that they have been discriminated against in private employment on the basis of race and national origin "because they are of Puerto Rican descent," in violation of 42 U.S.C. § 1981. Pursuant to Rule 12(b)(6), Fed.R.Civ.P., the defendants have moved to dismiss this aspect of the plaintiffs' complaint on the ground that allegations of discrimination on the basis of national origin do not state a cognizable claim under 42 U.S.C. § 1981. While the Court agrees that discrimination based solely on national origin is not actionable under § 1981, the Court finds that the plaintiffs have alleged sufficient facts to support a claim of discrimination based upon "race" within the meaning of § 1981. The Court therefore denies the defendants' motion to dismiss the plaintiffs' claims under 42 U.S.C. § 1981.

This latter statute provides in pertinent part:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens ...."

The exact boundaries of the protection afforded by § 1981 are not clear-cut at this time. On the precise issue presently before the Court, there is currently a divergence of opinion among several federal courts. *Cf. Manzaneres v. Safeway Stores, Inc.*, 593 F.2d 968 (10th Cir.1979); *Vera v. Bethlehem Steel Corp.*, 448

F.Supp. 610 (N.D.Pa.1978). The Court of Appeals for the Second Circuit has not yet issued a decision which would clearly control the Court's disposition of the issue.[1]

Despite Congress' use of the phrase "all citizens," the Supreme Court has noted that § 1981 was intended to provide a remedy for *racial* discrimination, but does not provide a remedy for discrimination based upon gender, age or religion. *Runyon v. McCrary*, 427 U.S. 160, 167, 96 S.Ct. 2586, 2592, 49 L.Ed.2d 415 (1976). The phrase, "as is enjoyed by white citizens," has been described by the Supreme Court as emphasizing "the racial character of the rights being protected." *Georgia v. Rachel*, 384 U.S. 780, 791, 86 S.Ct. 1783, 1789, 16 L.Ed.2d 925 (1966). The Court therefore accepts the defendants' claim that § 1981 does not afford a remedy for discrimination based on national origin alone, and that the scope of its protection is limited to discrimination based upon race.

The question remains, however, as to whether the plaintiffs' allegations are sufficient to state a cause of action under § 1981. The plaintiffs allege that they have been subjected to discrimination in their employment because of "race and national origin." The plaintiffs describe themselves as Hispanics of Puerto Rican descent. The Court must therefore decide whether discrimination against Hispanics of Puerto Rico descent is "racial" discrimination for purposes of 42 U.S.C. § 1981.

The Court initially notes that there is widespread disagreement as to what constitutes a "race," and there is no single, conclusive definition for the Court to rely on. Thus, the Court must look to what Congress intended when it enacted § 1981 to provide a remedy for "racial" discrimination.

■ Although the impetus for the enactment of § 1981 was the necessity for fur-

1. In *Guardians Association v. Civil Service Commission*, 633 F.2d 232, 268, n. 67, in which the court addressed several important issues involving both Title VII and § 1981, the court did not reach the issues here presented, but stated,

"[w]e also need not address, and we therefore express no opinion on, the question of the applicability of § 1981 to charges of discrimination against Hispanics."

ther protection of the former slaves, the broad language of the statute, its legislative history,[2] and holdings of the Supreme Court make it clear that the scope of the statute's protection is not limited to that afforded to black citizens. In *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 287, 96 S.Ct. 2574, 2582, 49 L.Ed.2d 493 (1976), the Supreme Court held that "§ 1981 is applicable to racial discrimination in private employment against white persons." This Court finds it significant that the Supreme Court in *McDonald* repeatedly refers to the groups protected in terms of "whites" and "non-whites" and does not attempt to define the "races" protected by § 1981 with any greater degree of particularity. For example, the Court framed the issue before it as "whether § 1981 prohibits racial discrimination in private employment against whites *as well as non-whites.*" Id. at 286, 96 S.Ct. at 2581. (Emphasis added). The Court concludes that the Supreme Court's repeated use of the term "non-white" in *McDonald* indicates that other "non-white" groups besides blacks are within the protection afforded by § 1981.

Without deciding which other non-white groups might fall within the protection of § 1981, the Court finds that the plaintiffs, as Hispanics of Puerto Rican descent, are within the protections afforded to non-whites by § 1981. While it is true that many Puerto Ricans are "white" in terms of actual skin color, it must be acknowledged that Hispanics of Puerto Rican descent are not perceived to be "white" by many Americans, regardless of their skin color.[3] Certainly, if the plaintiffs' allegations are taken as true, the defendants in this case did not consider the plaintiffs to be "white," and discriminated against the plaintiffs on that basis.

The Court's holding that the plaintiffs, as non-whites, state a cause of action under § 1981 is entirely consistent with the language of § 1981. The statute provides that "all persons" shall have the same right to make and enforce contracts "as is enjoyed by white citizens." Thus, the statute clearly assumes the existence of two distinct groups: "white" citizens and "non-white" citizens.

Moreover, the purpose of § 1981 is well served by the Court's finding that the plaintiffs are within the cloak of the statute's protection. The noble purpose of § 1981 was to ensure that all persons are granted the same rights in matters of private employment as are white persons. It must be generally recognized that some Hispanics of Puerto Rican descent are subjected to discrimination in the United States, and may be denied the rights which are sometimes taken for granted by white persons. Thus, it is the fulfillment of the purpose of § 1981, to allow the plaintiffs to seek a federal remedy for the discriminatory acts which they have alleged.

The Court finds that the plaintiffs have stated a cause of action under 42 U.S.C. § 1981, and the defendants' motion to dismiss the § 1981 claim is denied. *See also Pollard v. City of Hartford,* 539 F.Supp. 1156 (D.Conn.1982); *Maldonado v. Broadcast Plaza, Inc.,* 10 F.E.P. Cases 839 (D.Conn.1974).

### Conclusion

The Court dismisses the plaintiff's Title VII claims against Ouellette, but it denies the defendants' motion to dismiss the eleven named plaintiffs' Title VII claims, as well as § 1981 claims of all plaintiffs. The complaint shall be amended in a manner consistent with this ruling within twenty (20) days.

SO ORDERED.

---

**2.** For a thorough discussion of the pertinent legislative history *see McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 287–95, 96 S.Ct. 2574, 2582–86, 49 L.Ed.2d 493 (1976).

**3.** "Whatever else it may be, Puerto Rico is not a society that is preponderantly 'white' under conventional North American definitions of 'race'." Jose A. Cabranes [now United States District Judge, District of Connecticut], *Citizenship and the American Empire* 98 n. 475 (1975).