Vijaya BAPAT, M.D., M.P.H.

v.

CONNECTICUT DEPARTMENT OF HEALTH SERVICES, Frederick G. Adams, D.D.S., M.P.H., and Marie Spivey, R.N., M.P.A.

Case No. H–90–CV–100 (JAC).

United States District Court, D. Connecticut.

Dec. 29, 1992.

A. Susan Peck, Santos, Peck & Smith, Hartford, CT, for plaintiff.

Richard J. Lynch, Paul J. Lahey, Henry A. Salton, Office of Atty. Gen., Hartford, CT, for defendants.

## RULING ON MOTION TO DISMISS AND CROSS-MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

The plaintiff, Dr. Vijaya Bapat, brings this action against her former employer, the Connecticut Department of Health Services, against the former director of the Department, Frederick G. Adams, and against her former supervisor, Marie Spivey. In her complaint, the plaintiff alleges (1) discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII");[1] (2) an official policy of discriminatory employment practices in violation of 42 U.S.C. § 1981 ("Section 1981");[2] (3) discrimination on the basis of race and national origin in violation of the Equal Protection Clause of the Fourteenth Amendment, pur-

---

1. 42 U.S.C. § 2000e–2(a) provides in pertinent part that

 [i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

2. 42 U.S.C. § 1981 provides in pertinent part that

 [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to

the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

This section was amended on November 21, 1991 by the addition of provisions that defined the term "make and enforce contracts" and extended the section to cover discrimination by nongovernmental entities. See Act of Nov. 21, 1991, Pub.L. No. 102–166, Title I, § 101, 105 Stat. 1071 (codified at 42 U.S.C. § 1981(a)–(c)). This court has ruled, however, that the 1991 amendments to Section 1981 should not be given retroactive effect in this case. See note 13 infra.

suant to 42 U.S.C. § 1983 ("Section 1983");[3] (4) deprivation of property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment, pursuant to Section 1983; (5) discrimination on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA");[4] and (6) a second count of deprivation of property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment, pursuant to Section 1983. The plaintiff requests that she be reinstated to her former position; that her service rating be adjusted upward and that she receive a commensurate increase in salary and bonuses; and that she be awarded compensatory and punitive damages for civil rights violations, liquidated damages for age discrimination, and costs and attorney's fees.

Pending before the court are the defendants' Motion to Dismiss (filed March 1, 1991), plaintiff's Amended Motion for Summary Judgment (filed September 27, 1991) and defendants' Amended Motion for Summary Judgment (filed December 9, 1991). The court heard oral argument on these motions on January 16, 1992, following which the parties submitted supplemental briefs.

## BACKGROUND

Although there are substantial disagreements regarding certain facts, the following facts are not in dispute. The plaintiff, Dr. Vijaya Bapat, is a female medical doctor of Indian race and national origin who was born in 1936. She was hired by the State of Connecticut in 1970 and promoted in 1977 to the position of Chief of Maternal and Child Health[5] in the Community Health Division of the Connecticut Department of Health Services ("Department"). The first of the individual defendants, Dr. Adams, became Commissioner of the Department in March 1987. The second of the individual defendants, Ms. Spivey, was named Director of the Community Health Division of the Department at the same time. Ms. Spivey served as the immediate supervisor of Dr. Bapat.

In May 1988, Dr. Bapat received a negative performance evaluation under the Management Incentive Plan from Ms. Spivey, who found that Dr. Bapat "needed improvement" in five out of the eight categories of performance. On May 27, 1988, Ms. Spivey informed Dr. Bapat that she wished to remove her from her position as Director of Maternal and Child Health. Shortly thereafter, Ms. Spivey assigned Dr. Bapat to work on a special project at the University of Connecticut Health Center for thirty days commencing June 13, 1988.

When Dr. Bapat returned from her thirty-day assignment, the defendants did not permit her to reassume her duties as Director of Maternal and Child Health. Instead, the defendants required Dr. Bapat to give up her authority to manage her staff, to make budgeting decisions, and to supervise program implementation. Furthermore, the defendants denied Dr. Bapat access to her former office, to her files, to her professional and clerical staff, and to her reserved parking space. The defendants transferred Dr. Bapat to a laboratory building, even though she had no duties requiring laboratory facilities. In sum, the defendants permitted Dr. Bapat to retain little more than her salary and her title. The defendants made all of these changes without following the pre-discipline procedures set forth in Conn.State Regs. §§ 5–240–4a and 5–240–7a.

In an internal reorganization in December 1988, the Department eliminated the Bureau

---

**3.** 42 U.S.C. § 1983 provides in pertinent part that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and all laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**4.** 29 U.S.C. § 623(a) provides in pertinent part that

[i]t shall be unlawful for an employer ... [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

**5.** The title of the plaintiff's position was changed in January 1988 to Director of Maternal and Child Health.

of Community Health and created two new divisions in its place: the Child and Adolescent Health Division and the Family and Reproductive Health Division. The Department named two women as directors of these new divisions, both of whom had fewer years of service at the Department than Dr. Bapat did. The Department then removed the position of Director of Maternal and Child Health from its internal organization charts, but permitted Dr. Bapat to retain that title.

Dr. Bapat filed this action on February 9, 1990, alleging that the changes in her work assignments constituted a "constructive demotion." In 1991, the Department determined that it would be necessary to eliminate twenty-eight positions, including eight managerial positions. In a letter dated April 2, 1991, the new commissioner of the Department, Susan Addiss, informed Dr. Bapat that she would be terminated as a result of the state's "fiscal difficulties." The plaintiff filed an amended complaint on July 10, 1991, adding a sixth count which alleged that the layoff itself constituted a deprivation of property without due process of law.

## DISCUSSION

The defendants' motion to dismiss addresses all five counts of the complaint, each of which will be discussed in turn. The cross-motions for summary judgment concern only the fourth and sixth counts.

### I

A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

6. Rule 12(b) provides in pertinent part that

 [i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary

In deciding a motion to dismiss, a court must assume all factual allegations in the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. *See* Wright & Miller, *Federal Practice & Procedure* § 1357 (1990). Dismissal for failure to state a claim is generally disfavored by the courts. *Id.*

■ The plaintiff asks the court to treat the defendants' motion to dismiss as one for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.[6] In support of this position, the plaintiff notes that the defendants have filed an answer in this case and that the plaintiff herself has referred in her papers to matters beyond the scope of the complaint—including, for example, deposition testimony.[7] It is possible, although uncommon, for the pleading party to bring the conversion provision of Rule 12(b) into effect by submitting materials outside the complaint. *See* Wright & Miller, *Federal Practice and Procedure* § 1366 (1990). Nevertheless, the circumstances of this case do not justify treating the defendants' motion to dismiss as one for summary judgment. The amount of outside evidence introduced by the plaintiff is insubstantial; the court has not heretofore indicated that the motion to dismiss would be treated as one for summary judgment; and the defendants have not submitted outside evidence in support of their motion to dismiss. For these reasons, the court will exclude evidence outside the complaint from consideration in reviewing the motion to dismiss.

### A

■ The defendants seek dismissal of Counts One and Five as to defendants Adams and Spivey on the ground that these defendants were not named in the complaint filed by the plaintiff with the Equal Employ-

 judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

7. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (filed May 8, 1991) ("Plaintiff's May 8 Memorandum") at 2.

**530**

ment Opportunities Commission ("EEOC").[8] As a general rule, a private civil action under Title VII or the ADEA can be brought only against parties who are first named in a complaint filed with the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1); 29 U.S.C. § 626(d); *see also, e.g., Maturo v. National Graphics, Inc.,* 722 F.Supp. 916, 924 (D.Conn.1989). The twofold purpose of this exhaustion requirement is (1) to provide actual notice of the pending complaint to those alleged to have committed the violations and (2) to provide the charged parties an opportunity to seek a resolution of the matter without resort to the federal courts. *See Maturo,* 722 F.Supp. at 924–25; *see also Garcia v. Gardner's Nurseries, Inc.,* 585 F.Supp. 369, 373 (D.Conn.1984).

■ Courts in this district have recognized a limited exception to the exhaustion requirement in circumstances where the two underlying purposes of this rule are satisfied. *See Maturo,* 722 F.Supp. at 925; *Garcia,* 585 F.Supp. at 373. Under this approach, the exception is favored where one or more of the following factors is present: (1) the complainant could not through reasonable effort have ascertained the role of the unnamed party before filing the EEOC complaint; (2) the interests of the unnamed party are so similar to those of the named party that omitting the unnamed party from the EEOC proceedings would not have impeded conciliation efforts; (3) the unnamed party suffered no actual prejudice to its interests as a result of being omitted from the EEOC proceedings; and (4) the unnamed party represented to the complainant in some way that its relationship with the complainant was to be through the named party. *See Maturo,* 722 F.Supp. at 925; *Garcia,* 585 F.Supp. at 373; *see also Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977), *vacated and remanded on other grounds,* 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981).

■ The circumstances of this case weigh in favor of permitting an exception to the exhaustion requirement. It is arguable, as the defendants point out, that the plaintiff knew or should have known the identities of defendants Adams and Spivey at the time the EEOC complaint was filed.[9] But this fact alone is not decisive. The plaintiff has shown, and the defendants do not dispute, that defendants Adams and Spivey had actual notice of the charges contained in the EEOC complaint and that they were informed that the plaintiff was interested in pursuing conciliation efforts.[10] Moreover, the defendants have not shown, or even argued, that they suffered any actual prejudice as a result of the plaintiff's failure to name them in the EEOC complaint. Finally, the fact that Adams and Spivey were senior officials of the party named in the EEOC complaint establishes a substantial identity of interests among all three of the defendants. Although the failure to name the individual defendants in the EEOC complaint can be a serious omission, the circumstances of this case amply justify an exception to the exhaustion requirement normally imposed by Title VII and the ADEA. Accordingly, the defendants' motion to dismiss Counts One and Five as to defendants Adams and Spivey must be denied.

**B**

■ The defendants seek dismissal of all claims for damages under Count One on the ground that damages may not be awarded under Title VII.[11] It is well-established that Title VII provides only for equitable relief, not for compensatory, punitive, or other monetary damages. *See* 42 U.S.C. § 2000e–5(g) and (k). It would therefore be within the court's discretion to award the plaintiff back pay, together with prejudgment interest, if she were to prevail on her Title VII discrimination claim. It would also be permissible for the jury to award compensatory or punitive damages if the plaintiff were to prevail on her Section 1983 claims and to award liquidated damages if she were to prevail on her ADEA claim. But it would be impermis-

---

8. *See* Defendants' Memorandum in Support of Motion to Dismiss (filed March 1, 1991) ("Defendants' March 1 Memorandum") at 2–4.

9. *See* Defendants' March 1 Memorandum at 4.

10. *See* Plaintiff's May 8 Memorandum at 13–15.

11. *See* Defendants' March 1 Memorandum at 4.

sible, as the plaintiff expressly recognizes, for any compensatory, punitive, or liquidated damages to be awarded to the plaintiff on the basis of her Title VII claim. Because the plaintiff has stated that she seeks no damages in Count One, the defendants' motion to dismiss claims for damages under Count One must be granted absent objection.

### C

■ The defendants seek dismissal of Count Two as to all defendants on the ground that the complaint fails to allege a violation of the right to "make and enforce" contracts.[12] The Supreme Court has held that Section 1981 prohibits racial discrimination in the "making" and "enforcement" of contracts but does not impose a "general proscription of racial discrimination in all aspects of contract relations." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989).[13] Under *Patterson*, a Section 1981 claim must allege either a refusal to make a contract with the plaintiff or the impairment of the plaintiff's ability to enforce her established contract rights. *Id.* The Section 1981 claim alleged in Count Two of the complaint falls short of this standard, since it simply alleges that the defendants interfered with the terms and conditions of the plaintiff's contract after the contract was formed.[14] Certain courts in other jurisdictions have recognized an exception to the *Patterson* holding where a defen-

dant's promotion practices may implicate formation of a new contract. *See, e.g., White v. Federal Express Corp.*, 729 F.Supp. 1536, 1544 (E.D.Va.1990). In this case, however, the complaint does not adequately allege the denial of a promotion. For these reasons, the defendants' motion to dismiss Count Two in its entirety must be granted.

### D

■ The defendants seek dismissal of Count Three as to all defendants on the ground that this count inadequately alleges discriminatory intent.[15] It is well-established that Section 1983 does not create rights but, rather, protects rights established by the Constitution and laws of the United States. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). A complaint alleging a Section 1983 claim must therefore allege all elements of the constitutional or statutory claim upon which the Section 1983 claim is based. One essential element of a claim under the Equal Protection Clause of the Fourteenth Amendment is discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976). Consequently, discriminatory intent is an essential element of a Section 1983 claim that is based on an alleged equal protection violation. *See Silver v. City University of New York*, 947 F.2d

---

**12.** *See* Defendants' March 1 Memorandum at 4–8.

**13.** The plaintiff has argued that the Civil Rights Act of 1991, if applied retroactively, would permit her to allege a violation of Section 1981 without satisfying the requirements of *Patterson*. This court has ruled, however, that the Civil Rights Act of 1991 should not be given retroactive effect under the circumstances presented here. *See* Transcript of Hearing on Plaintiff's Motion to Amend Complaint (April 6, 1992) at 2. Virtually all of the Circuit courts to address this issue have also held that the Act should only be applied prospectively. *See, e.g., Johnson v. Uncle Ben's Inc.*, 965 F.2d 1363, 1373–74 (5th Cir. 1992); *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929, 940 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992); *Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1377 (8th Cir.1992); *Vogel v. Cincinnati*, 959 F.2d 594, 598 (6th Cir.1992). *But see Davis v. City and County of San Francis-*

co, 976 F.2d 1536 (9th Cir.1991) (applying retroactively the portion of the statute governing expert witness fees). Our Court of Appeals has not yet decided whether the 1991 Act applies retroactively. *See Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1048 (2d Cir.1992) (declining to determine retroactivity of the Act because issue was not properly briefed). District courts in this Circuit have reached varying conclusions on the retroactivity of the Act. *See Hill v. N.Y.C. Board of Education*, 808 F.Supp. 141, 155–56 (S.D.N.Y. 1992) (collecting cases).

**14.** *See* Second Amended Complaint ¶¶ 17–23.

**15.** *See* Defendants' March 1 Memorandum at 10–11. The defendants seek dismissal of Count Two on the same ground, *id.* at 9–10, but in light of the court's holding that Count Two should be dismissed on other grounds, it is unnecessary to consider the question of whether the plaintiff has adequately alleged discriminatory intent for purpose of Count Two.

1021, 1022 (2d Cir.1991); *Knight v. Nassau County Civil Service Commission,* 649 F.2d 157, 162 (2d Cir.1981).

The Federal Rules of Civil Procedure establish a liberal pleading standard. Rule 8 requires that a complaint "provide a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a). In applying this standard in discrimination cases, our Court of Appeals has granted motions to dismiss for failure to state a claim where the plaintiff has "failed to supply a comprehensible complaint" or has provided nothing more than a conclusory allegation. *See Becker v. Adams Drug Co.,* 819 F.2d 32, 33 (2d Cir.1987) (complaint failed to provide " 'any facts supporting [the plaintiff's] allegation of age discrimination' "); *see also Dugan v. Martin Marietta Aerospace,* 760 F.2d 397, 399 (2d Cir.1985) (complaint contained "no factual allegations whatsoever" to support "naked assertion" that plaintiff was terminated because of his age). The Court has noted, however, that a complaint can satisfy the pleading requirements of the federal rules if it "at least inform[s] the court and the defendant generally of the reasons the plaintiff believes age discrimination has been practiced." *Dugan,* 760 F.2d at 399; *see also* Wright & Miller, *Federal Practice & Procedure* § 1357 (1990) (complaint must give defendants facts on which to base responsive pleading).

■ In light of the standards outlined here, it is clear that Count Three of the complaint sufficiently alleges discriminatory intent. The complaint states that the plaintiff is of Indian race and national origin;[16] that she possesses substantial professional qualifications;[17] that she has consistently received positive performance reviews (except for the negative review that is being challenged here);[18] that the person to whom her duties were transferred is white;[19] that that person's professional qualifications are significantly less substantial than the plaintiff's;[20]

and that the defendants' explanations for the plaintiff's negative performance evaluation and for her loss of duties are "pretexts for discrimination."[21] These statements are sufficient to inform the defendants of the nature of the plaintiff's allegation—namely, that the defendants stripped the plaintiff of her duties because of her race or national origin. By setting forth the basic factual allegations on which her claim rests, the plaintiff has given the defendants facts on which to base a responsive pleading. Nothing more is required in a complaint.

### E

■ The defendants seek dismissal of Count Three as to defendant Adams on the ground that the complaint does not sufficiently allege his involvement in the allegedly unlawful conduct.[22] A Section 1983 claim must contain "specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). In applying this standard, our Court of Appeals has dismissed claims against individual defendants where the complaint is "entirely devoid" of any allegations that the defendants were "directly and personally responsible for the purportedly unlawful conduct." *Id.* at 886. The Court of Appeals has also made it clear, however, that courts must use caution in determining whether to dismiss civil rights complaints. *See Dwyer v. Regan,* 777 F.2d 825, 829 (2d Cir.1985) (holding that norms disfavoring dismissal should be "applied with particular strictness when the plaintiff contends that there has been a violation of his civil rights.").

In light of the standards articulated by our Court of Appeals, it is clear that Count Three sufficiently alleges the involvement of defen-

---

**16.** *See* Second Amended Complaint ¶ 13.

**17.** *See id.* ¶ 14–15.

**18.** *See id.* ¶ 17.

**19.** *See id.* ¶ 21.

**20.** *See id.*

**21.** *See id.* ¶ 24.

**22.** *See* Defendants' March 1 Memorandum at 11–14.

dant Adams in the purported due process violation. First of all, it is apparent that Count Three is not "entirely devoid" of any allegations against defendant Adams. Paragraphs 13 through 25 of the complaint, which are incorporated in Count Three, contain several allegations against both individual defendants: they allege that "Defendant[s] have refused to inform Plaintiff of the status of her requests and have essentially made her a nonfunctioning employee with no significant job duties";[23] that "[t]he actions and practices of Defendants, as described in paragraphs 13 through 24, constitute a constructive demotion of Plaintiff and discrimination against her on the basis of national and racial origin and ancestry";[24] and that the defendants' actions "reflect an official policy or custom to engage in unconstitutional, illegal and discriminatory employment practices."[25] While the last of these allegations is arguably conclusory, the first two are sufficient on their own to describe the role that defendant Adams is alleged to have played in violating the plaintiff's constitutional rights. Because Count Three adequately alleges the direct and personal involvement of defendant Adams, the defendants' motion to dismiss Count Three as to defendant Adams must be denied.

## F

■ The defendants seek dismissal of Counts Three and Four as to the defendant State of Connecticut and as to the individual defendants in their official capacities on the ground that they are protected by immunity under the Eleventh Amendment.[26] States are protected by the Eleventh Amendment against suits for damages by private citizens except in two instances: the immunity can be waived by a state's "clear declaration" that it consents to be sued in federal courts, or it can be overridden by Congress acting pursuant to the enforcement clause of the Fourteenth Amendment. *See Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361,

39 L.Ed.2d 662 (1974) (discussing waiver by state); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976) (discussing override by Congress). The plaintiff has conceded that neither exception is applicable in this case, thereby acknowledging that he cannot bring a claim for damages against the State of Connecticut.[27] The defendants' motion to dismiss Counts Three and Four as to the State of Connecticut must therefore be granted.

■ State officials acting in their official capacities are also protected by the Eleventh Amendment against suits by private plaintiffs for damages. *See Edelman,* 415 U.S. at 663, 94 S.Ct. at 1356. Moreover, state officials acting in their official capacities are not "persons" within the meaning of Section 1983. *See Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Consequently, as the plaintiff has conceded,[28] the defendants' motion to dismiss Counts Three and Four as to the individual defendants in their official capacities must be granted.

## G

For the reasons stated above, the defendants' motion to dismiss is denied as to Count One (the Title VII claim) with the provision that only equitable relief will be available if the plaintiff prevails on this count; the motion is granted as to Count Two (the Section 1981 claim); the motion is granted as to Counts Three and Four (the Section 1983 claims under the Fourteenth Amendment) to the extent that they charge the State of Connecticut and the individual defendants in their official capacities; the motion is denied as to Counts Three and Four to the extent that they charge the individual defendants in their individual capacities; and the motion is denied as to Count Five (the age discrimination claim).

**23.** *See* Second Amended Complaint ¶ 23.

**24.** *See id.* ¶ 25.

**25.** *See id.* ¶ 28.

**26.** *See* Defendants' March 1 Memorandum at 14–17.

**27.** *See* Plaintiff's May 8 Memorandum at 31.

**28.** *See id.*

## II

Both parties have moved for summary judgment on Counts Four and Six, in which the plaintiff alleges that her reassignment and subsequent termination constituted a deprivation of property in violation of her Fourteenth Amendment right to due process of law and therefore entitle her to damages under Section 1983. In light of the court's finding that the plaintiff cannot recover damages from the State of Connecticut or from the individual defendants in their official capacities, the remaining defendants for purposes of Counts Four and Six are defendants Adams and Spivey in their individual capacities only.

 The standards governing motions for summary judgment are well-established. Rule 56(c) of the Federal Rules of Civil Procedure provides "that summary judgment shall be rendered only when a review of the entire record demonstrates that there is no genuine issue as to any material fact." The mere existence of disputed factual issues will not suffice to defeat a motion for summary judgment where those issues are not material to the claims before the court. *Quarles v. General Motors Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir.1985). In the context of a motion for summary judgment pursuant to Rule 56(c), disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law even if the disputed issues were resolved in favor of the non-moving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary relief. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992).

## A

Count Four raises the difficult question of whether the defendants, in radically changing the plaintiff's responsibilities without altering her salary or rank, deprived her of a property right without due process of law. The parties have briefed this issue with considerable thoroughness, but in the end these motions can be decided on the basis of an issue to which the parties have dedicated somewhat less attention: the qualified immunity defense.

### (1)

 The "qualified immunity" defense protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Siegert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277, *reh'g denied*, —— U.S. ——, 111 S.Ct. 2920, 115 L.Ed.2d 1084 (1991). Even where the contours of the plaintiff's federal rights are clearly established at the time of the defendant's acts, "the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987). As our Court of Appeals has observed, "the standard governing the availability of this defense has evolved into one of objective reasonableness, designed to 'permit the resolution of many insubstantial claims on summary judgment.' " *Id.* at 920 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738).

 The defense established in *Harlow* is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original). The breadth of the qualified immunity defense reflects the Supreme Court's concern not only with the cost of exposing government officials to civil liability but also with "the general costs of subjecting officials to the risks of trial—distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737. The Supreme Court's emphasis on protecting government officials against both the costs of litigation and the costs of liability further underscores the importance of resolving claims on summary judgment wherever possible.

(2)

The threshold issue raised by the defendants' claim of qualified immunity is whether the right alleged to have been violated was "clearly established." The Supreme Court addressed this issue is some detail in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In that decision, the Court recognized that "the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause ... violates a clearly established right." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039. Emphasizing the need to preserve a balance between citizens' vindication of their constitutional rights and officials' performance of their public duties, the Court held that qualified immunity could be overcome only where a right was "clearly established" in a "more particularized" sense:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the preexisting law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039 (citations omitted). The Supreme Court established in *Anderson* that there must be a close factual correspondence between authoritative precedents and the case at hand for a court to find that defendants violated a "clearly established" right. *See Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. The Court has not, however, provided specific criteria for determining how close the factual correspondence must be—perhaps because the highly contextual nature of this determination would render such criteria useless. In the absence of such criteria, the determination of whether a right is clearly established must ultimately be made by reference to the legal principle on which the *Anderson* decision was based: the norm of "objective legal reasonableness." *See Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038 (citing *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2739).

■ Following *Anderson*, our Court of Appeals has emphasized that "a court must take care not to pose the issue [of qualified immunity] in terms that are too general or abstract." *Mozzochi v. Borden*, 959 F.2d 1174, 1177 (2d Cir.1992); *see also Zavaro v. Coughlin*, 970 F.2d 1148, 1153 (2d Cir.1992); *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir.1992). To achieve the proper focus, courts must determine not only whether a right has been established but also whether a reasonable official would have known that the acts in question violated the alleged right. *See Krause v. Bennett*, 887 F.2d 362, 368 (2d Cir.1989); *see also Gutierrez v. Municipal Court of Southeast Judicial District*, 838 F.2d 1031, 1048 (9th Cir.1988) (courts should focus on "whether it is clearly established that the particular act by the public official constitutes a violation of the right involved").

(3)

■ The actions challenged in Count Four involve the "constructive demotion" or "reassignment" of the plaintiff within the Department. As they acknowledge, the defendants stripped the plaintiff of all the duties and perquisites of her position as Director of Maternal and Child Health except for her title and salary. The plaintiff alleges that this action violated her constitutional right to due process of law because (1) she possessed a "property interest" in her position as Director of Maternal and Child Health; (2) the defendants' actions amounted to a "deprivation" of that property interest; and (3) the defendants' failure to provide a pre-deprivation or post-deprivation hearing denied the plaintiff the process that is due for deprivation of such an interest. The defendants reject the plaintiff's position on all three grounds and also assert the defense of qualified immunity.

The defense of qualified immunity is available here for two reasons. First, it was not clearly established in this Circuit at the time of the events in question that a personnel decision short of termination could amount to a "deprivation" of a property interest. The issue had not yet been directly addressed by our Court of Appeals, and at least two cases in this District had squarely held that "per-

sonnel decisions short of termination do not constitute a deprivation of a property interest under the due process clause of the fourteenth amendment." *Wargat v. Long*, 590 F.Supp. 1213, 1215 (D.Conn.1984) (Blumenfeld, J.); *see also Glaski v. Connecticut Department of Administrative Services*, No. H-86-929 (JAC), slip op. (D.Conn. April 11, 1991) (following *Wargat*). Our Court of Appeals first considered the due process issues raised by personnel actions short of termination in a decision issued on August 1, 1991—more than three years after the defendants "demoted" the plaintiff. *See Ezekwo v. N.Y.C. Health & Hospitals Corp.*, 940 F.2d 775, 783 (2d Cir.1991) (physician possesses property interest in opportunity to serve as Chief Resident in teaching hospital). While the decision in *Ezekwo* certainly casts doubt on the validity of *Wargat* and *Glaski*, the fact remains that *Ezekwo* was issued long after the defendants "demoted" the plaintiff. As a result, it would be exceedingly difficult to conclude that the defendants' actions violated the law of this Circuit as the law existed when those actions took place.

Even if it had been clearly established in this Circuit that decisions short of termination could violate a state employee's due process rights, the plaintiff would still have to show that it was clearly established that the specific actions taken here violated those rights. *See Mozzochi*, 959 F.2d at 1177. To do this, the plaintiff would have to show that it was clearly established that she had a property interest in her duties—not just in her salary and title—as Director of Maternal and Child Health. The plaintiff provides inadequate support for this view. She does argue that the law prohibiting officials from "demoting" certain employees without just cause gives those employees a property interest not only in their status as employees but also in the positions that they hold.[29] But the plaintiff does not demonstrate that Connecticut law clearly establishes that hav-

ing a property interest in a position gives an employee an interest in the duties—as opposed to the salary and title—of that position.

The plaintiff properly notes that courts in other jurisdictions have found that employees can possess property interests in the duties of their positions. *See Winkler v. County of De Kalb*, 648 F.2d 411, 414 (5th Cir.1981) (licensed engineer deprived of property interest by transfer to position with less responsibility but same salary); *Jett v. Dallas Independent School District*, 798 F.2d 748, 754 (5th Cir.1986) (high school football coach could be deprived of property interest by transfer to position as classroom teacher); *Sowers v. City of Fort Wayne*, 737 F.2d 622, 624 (7th Cir.1984) (firefighters could be deprived of property interest by demotion to different rank); *Robb v. City of Philadelphia*, 733 F.2d 286, 293 (3d Cir.1984) (municipal employees could be deprived of property interest by "demotion" but not by "transfer"). These cases stand for the sensible idea—not yet directly considered or adopted in this Circuit—that property interests in employment can vary in scope: while one employee might possess a property interest only in his salary and title, another might hold a property interest in the specific powers or duties of his position. But these cases also stand for the proposition, which the plaintiff does not emphasize, that the scope of an employee's property interest in employment depends heavily on the particular statutory and contractual terms that define his position. Consequently, even if it had been possible to possess the narrowly defined property interest that the plaintiff asserts, it is not clear that such an interest existed in this case. For that reason, the plaintiff cannot claim that she had a "clearly established" property interest in her duties as Director of Maternal and Child Health.

**29.** Conn.Gen.Stat. § 5–240(b) provides in pertinent part that

 [a]n appointing authority, subject to any regulations issued by the commissioner of administrative services, may demote an employee in the classified service under his jurisdiction from a position in any given class or grade to a position in a lower class or grade.

Conn.State Reg. § 5–240–4a(a) provides in pertinent part that

 [a]n appointing authority may demote an employee for inefficiency or incompetence when the employee's performance of his duties clearly indicates he is not rendering satisfactory service.

In sum, the plaintiff's claim in Count Four raises important questions of constitutional law that remain unsettled in this Circuit. It may well be that, following the decision in *Ezekwo*, our Court of Appeals has begun to adopt the approach that the plaintiff urges upon this court. But it is precisely because the law of this Circuit was unsettled at the time of the plaintiff's "demotion" that the defendants are entitled to the protection of the qualified immunity defense.

### B

■ The allegations in Count Six involve the termination of the plaintiff on May 30, 1991. The plaintiff alleges that her layoff constituted a deprivation of property without due process of law in violation of her rights under the Fourteenth Amendment.[30] In support of this claim, the plaintiff alleges that the defendants (1) deprived her of the right to be heard prior to her termination, because the termination notice did not state the true reasons for her termination and (2) deprived her of the right to a post-deprivation hearing.[31] The plaintiff argues that the termination notice misstated the true reasons for her termination because it ascribed the decision to the state's "fiscal difficulties" rather than ascribing it to the prior "demotion" of the plaintiff.[32] In response, the defendants argue that (1) they have no obligation under the Due Process Clause to provide a hearing when a state employee is laid off for fiscal reasons and (2) even if such a hearing were required, the defendants provided an adequate opportunity for both pre-deprivation and post-deprivation hearings.[33] The defendants have not asserted qualified immunity as a defense to Count Six.

It is commonplace for a state government to abolish or consolidate positions in order to improve the efficiency of its operations. Recognizing the importance of these streamlining efforts, our Court of Appeals has held that the Due Process Clause does not require that a state "routinely provide hearings for employees whose positions are targeted for elimination whenever the state adopts such efficiency measures." *Dwyer v. Regan*, 777 F.2d 825, 833 (2d Cir.1985) (Kearse, J.), *modified*, 793 F.2d 457 (2d Cir.1986). Instead, the Court has held that a state must provide a hearing in more narrowly defined circumstances:

> Where ... there is no indication that the state has undertaken substantial measures such as these but rather is alleged to have targeted a single employee for termination, we hold that if the state has a due process obligation to provide a hearing prior to removing that employee from his ongoing position, and if the employee protests the notice of elimination of his position and contends that it is but a pretext for the deprivation of his property right, the state must be prepared to grant the employee some kind of hearing prior to the termination of his employment.

*Dwyer*, 793 F.2d at 457.

The plaintiff has not established that the circumstances outlined in *Dwyer* are present here. The plaintiff has established that she could not be removed from her position except for good cause, thus establishing that she possessed some kind of a property interest in her continuing employment. But the plaintiff has neither alleged nor attempted to show that the mass layoffs initiated by the state in 1991 amounted to a pretext for targeting the plaintiff for termination.[34] In-

---

**30.** *See* Second Amended Complaint ¶ 45–55.

**31.** *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (filed September 26, 1991) ("Plaintiff's September 26 Memorandum") at 33–35.

**32.** *See id.*

**33.** *See* Defendants' Supplemental Memorandum of Law in Opposition to Plaintiff's Amended Motion for Summary Judgment and in Support of Defendants' Amended Motion for Summary Judgment (filed December 9, 1991) ("Defendants' December 9 Memorandum") at 13–26.

**34.** The defendants assert, and the plaintiff does not dispute, that state budget officials ordered the Department of Health Services in 1991 to specify 28 positions for elimination as part of a larger effort to reduce the size of the state government. *See* Defendants' December 9 Memorandum at 17. *See also* Hinds, "States' Public Workers Face New Round of Layoffs," *New York Times*, October 10, 1991, at A20; Waldman, "7500 Layoffs Could Ravage State Services," *Hartford Courant*, September 27, 1991, at A1.

deed, the plaintiff concedes the defendants' contention that massive layoffs were necessary in 1991 and that the plaintiff was selected for layoff in part because her removal would "have the least impact on the bureau and the agency." [35] All that the plaintiff has attempted to prove is that her earlier "demotion" by the defendants "made her expendable and vulnerable to dismissal and thus led to the decision to identify her for layoff." [36] Even if this were true—and it may well be true—it simply tends to confirm the defendants' explanation for the plaintiff's termination: she was terminated because she was less useful to the Department than other employees were at the time the mass layoffs took place. To show that the state's fiscal difficulties were a pretext for other motives, the plaintiff would have to present evidence that she was *not* "expendable" at the time of her termination. Because the plaintiff has not attempted to do this, she has not raised a genuine issue of material fact about whether the defendants were obligated under *Dwyer* to provide a pre-termination hearing.

Arguably, the plaintiff could also challenge the defendants' failure to provide a pre-termination hearing by establishing that the primary reason for her earlier "demotion" was to make her vulnerable to the eventual layoff. Under those circumstances, it would still be true that the layoff itself reflected a bona fide determination that the plaintiff was "expendable." But the fact that the plaintiff had been demoted for the purpose of rendering her vulnerable to layoff would, in effect, make the "demotion" a part of the layoff decision. As a result, it would be possible to conclude that the plaintiff had been "targeted" for layoff despite the fact that the layoff itself occurred as part of a bona fide streamlining operation. In this case, however, the plaintiff has not argued, much less shown, that the purpose of the "demotion" was to make her vulnerable to the termination.

In sum, the plaintiff has not established that her termination was unconstitutional simply because she has shown that it was a probable consequence of her "demotion." Because her termination occurred as part of a large-scale workforce reduction, the plaintiff would have to establish that she was "targeted" for termination by the defendants. *See Dwyer,* 777 F.2d at 833, *modified,* 793 F.2d at 457. The plaintiff could establish that she was "targeted" by showing either that the defendants' cost-cutting rationale was a pretext for other motives or that the defendants' purpose in demoting her was to leave her vulnerable to a cost-cutting layoff. Because the plaintiff has not made either of these showings, she has failed to raise a genuine dispute of material fact with respect to the constitutionality of her termination. For that reason, the defendants' motion for summary judgment against the plaintiff on Count Six must be granted.

### CONCLUSION

To summarize:

(1) the defendants' motion to dismiss is denied as to Count One (the Title VII claim), with the understanding that the plaintiff would be entitled only to equitable relief were she to prevail on Count One;

(2) the defendants' motion to dismiss is granted as to Count Two (the Section 1981 claim);

(3) the defendants' motion to dismiss is granted as to Count Three (the Section 1983 claim based on an alleged violation of the Equal Protection Clause) with respect to the defendant State of Connecticut and to the individual defendants in their official capacities, but it is denied as to Count Three with respect to the individual defendants in their individual capacities;

(4) the defendants' motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied, as to Count Four (the Section 1983 claim based on an alleged violation of the Due Process

---

**35.** *See* Plaintiff's September 26 Memorandum at 34; Defendants' December 9 Memorandum at 15–17; *see also* Plaintiff's Memorandum in Opposition to Defendants' Amended Motion for Summary Judgment and in Reply to Defendants' Supplemental Memorandum of Law in Opposition to Plaintiff's Amended Motion for Summary

Judgment (filed January 15, 1992) ("Plaintiff's January 15 Memorandum") at 15–22.

**36.** *See* Second Amended Complaint ¶ 52; *see also* Plaintiff's September 26 Memorandum at 34.

Clause as a result of the plaintiff's "demotion");

(5) the defendants' motion to dismiss is denied as to Count Five (the age discrimination claim); and

(6) the defendants' motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied, as to Count Six (the Section 1983 claim based on an alleged violation of the Due Process Clause as a result of the plaintiff's termination).

In sum, for the reasons stated above, the defendants' Motion to Dismiss (filed March 1, 1991) (doc. # 63) is hereby GRANTED in part and DENIED in part; the plaintiff's Amended Motion for Summary Judgment (filed September 26, 1991) (doc. # 93) is hereby DENIED; and the defendants' Amended Motion for Summary Judgment (filed December 9, 1991) (doc. # 102) is hereby GRANTED.

It is so ordered.